## PRINCESS LIDA OF THURN AND TAXIS ET AL. *v.* THOMPSON ET AL., TRUSTEES.

No. 118. Argued November 17, 18, 1938.—Decided January 3, 1939.

*Mr. Charles H. Tuttle,* with whom *Mr. Gerald J. Craugh* was on the brief, for petitioners.

*Messrs. Dean D. Sturgis* and *W. Brown Higbee* for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This case presents the question whether the exercise of jurisdiction by a state court over the administration of a trust deprives a federal court of jurisdiction of a later suit involving the same subject matter.

December 6, 1906, Gerald P. Fitzgerald, a citizen of Ireland, and his wife Lida, entered into an agreement with each other and with Josiah V. Thompson, Charles E. Lenhart, and Fitzgerald, as trustees, which recited the marriage of the two first named, that they had three sons, and that, on December 5, 1906, Lida had obtained a decree of divorce in Ireland. The agreement provided

458

for payments of alimony by Gerald to Lida pending an absolute divorce (which was eventually granted), and for payments thereafter by Gerald to the trustees for the benefit of Lida and the children, to be made out of his share of the profits of two partnerships of which he was a member. From these profits Gerald was to pay the trustees for Lida's benefit an annuity of $15,000 for the first three years and $20,000 thereafter. He was further to pay any difference between the amount of the annuity and one-third of his share of the profits annually until a fund should be established in the hands of the trustees amounting to $300,000, in which Lida, the sons, and Gerald were given interests, either of income or principal or both. In the event of death, resignation, or disability of a trustee, or a successor trustee, the vacancy was to be filled by appointment by the two remaining trustees, or, on their failure to appoint, by the Court of Common Pleas of Fayette County, Pennsylvania, on the petition of a remaining trustee or of Lida.

Lida and the three sons are living. Gerald has assigned his interest in the trust to the Second National Bank of Uniontown, Pennsylvania.

Gerald performed the agreement until June, 1910, when he repudiated it. Thompson, one of the trustees, Lida and her sons, brought suit in equity in the Common Pleas Court of Fayette County, Pennsylvania, seeking performance of the agreement by Gerald and other relief. Gerald answered praying a declaration that the agreement was void. After a hearing the court entered a decree sustaining the agreement; ordering Gerald to account and to pay what might be shown to be due; removing him as a trustee; fixing a lien upon his partnership interests; and restraining him from encumbering or conveying them until the $300,000 fund contemplated by the agreement should be accumulated in the hands of the trustees.

In March, 1915, the trustees then in office petitioned for leave to amend the agreement and for modification of the earlier decree to provide that .Gerald should pay and secure to the trustees the payment of sums sufficient to create two funds, one of $400,000 for Lida's benefit and the other of $300,000 principally for the sons' benefit. The court approved the petition and modified its former decree accordingly. May 25, 1925, the trustees then in office acknowledged receipt of all the sums due under the decree of the court as modified and directed that satisfaction of the decree be entered of record. This was done June 3, 1925.

October 9, 1925, the three acting trustees filed an account in the Common Pleas Court, which, in the absence of exceptions, was confirmed. July 7, 1930, a second and partial account was filed in the same court by two surviving trustees on behalf of themselves and a deceased trustee.

On the next day Lida and her son John brought suit in equity in the United States District Court for the Western District of Pennsylvania against the two trustees and the administrators of the deceased trustee, alleging mismanagement of the trust funds and praying that the trustees be removed and all the defendants be made to account and repay the losses of the estate. Thereafter the Court of Common Pleas extended the time for filing exceptions to the second account and, on February 16, 1931, exceptions were filed by Gerald P. Fitzgerald, Jr. Meantime the trustees moved to dismiss the bill in the federal court for lack of indispensable parties and because the state court had exclusive jurisdiction of the controversy. May 12, 1931, the federal court refused the motion to dismiss and required the defendants to answer, declaring that it would not decide the question of jurisdiction until after answers had been filed. May 18, 1931, the defendants

answered setting up that the controversy was within the exclusive jurisdiction of the state court. Nothing further was done in the federal suit until April 17, 1937, when the plaintiffs amended their bill. May 5, 1937, the trustees answered the amendment. Meantime, on May 1, 1937, the trustees had presented a petition in the state court for a rule upon the plaintiffs in the District Court, the petitioners herein, to show cause why they should not be restrained from prosecuting their suit in the federal court. After an answer by Lida denying that the Common Pleas Court had control or possession of the trust funds or that any controversy was therein pending when suit was instituted in the federal court, the rule was made absolute June 17, 1937. July 6, 1937, John Fitzgerald, one of the petitioners, applied to the federal court for an injunction to restrain the defendants in the case there pending, the respondents herein, from further prosecution of the proceedings in the state court. On the same day the petitioners took an appeal from the order of the Common Pleas Court to the Supreme Court of Pennsylvania. July 19, 1937, the trustees filed in the Common Pleas Court a third and partial account of the trust to which exceptions were filed. Testimony was thereafter taken on the exceptions to the second account. September 18, 1937, the federal court temporarily enjoined the defendants in that court, the respondents herein, from further prosecution of the proceedings in the state court to enjoin the plaintiffs, the petitioners herein, from having the jurisdictional issue tried in the District Court, and set November 8, 1937, for a trial of that issue. Trial was accordingly had.

March 21, 1938, the Supreme Court of Pennsylvania affirmed the order of the Common Pleas Court enjoining the petitioners from prosecuting their suit in the District Court,[1] and, on the same day, the District Court rendered

---

[1] *Thompson v. FitzGerald*, 329 Pa. 497; 198 Atl. 58.

an opinion holding it had jurisdiction notwithstanding the proceedings in the Common Pleas Court. The District Judge entered no decree but stated that requests for findings of fact, conclusions of law, and a form of decree, might be submitted, and that he would proceed thereafter to try the merits of the cause.

We are thus confronted with a situation where each of the courts claiming jurisdiction has restrained the parties before it from proceeding in the other. In view of this unusual state of affairs, of the importance of the question involved, and of the claim that the action of the Supreme Court of Pennsylvania is in conflict with our decisions, we granted the writ of certiorari.

*First.* The suit brought in Common Pleas Court in 1910 was for the specific performance of the agreement of December 6, 1906. The decree in that suit declared the agreement valid and commanded performance in accordance with its terms. As the agreement called for a continuing performance, and the decree was for enforcement of that performance, the court retained jurisdiction to render the granted relief effective. It exercised this retained jurisdiction in 1915, when, by consent of the parties, it modified its decree to comport with amendments of the agreement. But the court's jurisdiction under the bill ceased when Fitzgerald had completely performed in accordance with the amended decree of 1915, as evidenced by the trustees' acknowledgment filed of record in the court on June 3, 1925, that the terms of the decree had been satisfied. The trust was created by agreement inter partes, one of whom repudiated and failed to perform it. When performance had been obtained the equity proceeding was at an end; the trust res in the hands of the trustees, who were the creatures of the agreement, then had the same status as if the court had never been called upon to act.

*Second.* Although the agreement provided that vacancies occurring by death, resignation, or incapacity of a

trustee should be filled by the remaining trustees, and that application to the Court of Common Pleas to appoint a new trustee should only be made in the event the trustees in office could not agree on the appointment of a successor, it appears that from time to time trustees presented their resignations to that court and the court purported to accept them. And when the remaining trustees appointed new trustees to fill vacancies they reported their action to the court which sometimes purported to confirm and ratify that action. The record does not disclose that the first method provided in the agreement for filling vacancies ever was impracticable, or that there was occasion for resort to the court. The petitioners contend that in the circumstances, the court's approval was unnecessary and did not amount to an assumption of jurisdiction. We find it unnecessary to pass upon the contention.

*Third.* The important questions are whether the filing of the trustees' account on July 7, 1930, gave the Common Pleas Court jurisdiction, and, if so, what was the nature and extent of that jurisdiction. The Court of Common Pleas is given "the jurisdiction and powers of a court of chancery, so far as relates to: . . . The control, removal and discharge of trustees, and the appointment of trustees, and the settlement of their accounts." [2] Respecting the character of the jurisdiction conferred by a statutory grant so phrased the Supreme Court of Pennsylvania has said: "The scope of supervisory control of necessity includes any matter which concerns the integrity of the trust res—its administration, its preservation and its disposition and any other matter wherein its officers [trustees] are affected in the discharge of their duties." [3] This jurisdiction is vested

---

[2] Act of June 16, 1836, P. L. 784, § 13; 17 P. S. § 281.

[3] *Wilson* v. *Board of Directors of City Trusts,* 324 Pa. 545, 551; 188 A. 588, 592.

in the court of common pleas of the county in which "any such trustee shall have resided at the commencement of the trust." [4] Two of the original trustees named in the agreement were residents of Fayette County. Two methods are provided for invoking the jurisdiction with respect to the administration of the trust. The court may cite the trustee on the application of any person in interest "to exhibit an account of the management of the trust estate." [5] The trustee may, on the other hand, obtain an adjudication of his management of the trust by filing his account in the office of the prothonotary of the court and, upon such filing, proceedings are to be had in the same manner as if he had filed the account under compulsion. [6] The trustee is permitted to have an adjudication of his stewardship in this manner every three years. [7]

It thus appears that whether an account be filed pursuant to citation or as the voluntary act of the trustee the jurisdiction of the court attaches and may be exercised over all the matters which fall within its supervisory control of the administration of the estate. The

[4] Act of June 14, 1836, P. L. 628, § 15; 20 P. S. § 2741; § 16, 20 P. S. § 2872; § 23, 20 P. S. § 2767; Act of May 1, 1861, P. L. 680, § 1; 20 P. S. § 2871.

[5] Act of June 14, 1836, P. L. 628, § 19; 20 P. S. § 2833.

[6] Act. of June 14, 1836, P. L. 628 § 14; 20 P. S. § 2925.

[7] "All trustees of estates . . . may hereafter, triennially, from the date of their appointment, file their accounts in the appropriate courts, which shall be duly audited, and confirmed absolutely to that date: . . . provided further, That due and actual notice shall have been given, where the acount shall be filed by a trustee, to all persons interested in the estate, under the terms and provisions of the trust; . . . and that advertisement shall have been duly made of the filing of said account; and that such persons, actually notified, are legally competent and qualified, either personally or by their guardians, to appear in court and object to said account if they so desire." Act of May 3, 1909, P. L. 391, § 1; 20 P. S. § 2853.

court has the power to fix the compensation of the trustee,[8] to require him to take over from the trust investments improperly made and to restore the amount expended for them to the trust estate,[9] to surcharge him with losses incurred, to allow him his proper expenses, to find against him a balance due the estate, and to make the balance found due a lien upon his real estate.[10] In the case of a continuing trust such as that here in question, after adjudication, the corpus is reawarded to the trustee for further administration in accordance with the terms of the trust. In the case of an account filed at the close of administration the court has power to decree distribution to the parties entitled. Under the equity powers conferred upon it the court may enforce its orders against a trustee by attachment for contempt.[11] The jurisdiction extends to a trust like the present created by deed or voluntary agreement.[12] The audit and confirmation of the account is to be had after advertisement and other forms of notice and is binding on all those anywise interested in the estate who have had the required statutory notice of the audit.[13] The parties in in-

---

[8] Act of June 14, 1836, P. L. 628, § 29; 20 P. S. 3271.

[9] See the opinion below, 329 Pa. 512; 198 A. 58.

[10] Act of April 30, 1855, P. L. 386, § 1; 20 P. S. § 2854.

[11] *Chew's Appeal*, 44 Pa. 247; *Scott* v. *Jailer*, 1 Grant 237; *Morrison* v. *Blake* (No. 1) 33 Pa. Super. Ct. 290, 297; *Commonwealth* v. *Heston*, 292 Pa. 63, 68; 146 A. 533.

[12] See *Baskin's Appeal*, 34 Pa. 272; *Jones' Estate*, 15 Pa. Dist. Rep. 30; *In re Weiser Trust*, 23 York 80; *Ball's Estate*, 220 Pa. 399; 69 A. 817.

[13] The petitioners lay stress on an averment in the answer filed in the Common Pleas Court to the trustees' petition for a rule to show cause why the petitioners should not be restrained from prosecuting their suit in the federal court. This is to the effect that the trustees' accounts had been "filed without notice to the" petitioners. No notice of the intention to file is required. Notice is to be given to the parties in interest that the account has been filed and will be audited. There is no averment that the beneficiaries of the trust did not receive such notice.

terest are permitted by exception and objection to the account to raise all pertinent questions respecting the management of the trust, and to invoke the powers of the court over the subjects above mentioned.[14] The audit will further disclose whether there be probable ground for the removal of the trustee and the appointment of another in his place and if that be done the court has jurisdiction to compel the removed trustee to transfer the trust assets to his successor.

It is obvious that the filing of their account on July 7, 1930, subjected the respondents, as the trustees then in office, to the exercise of the powers thus conferred upon the Court of Common Pleas.

We turn to the suit instituted in the District Court to ascertain what relief was there sought. In the bill as originally filed sundry investments made by the trustees were attacked and they were charged with mismanagement of the estate. The prayers were that they be cited to file an account of the trust; that they be removed; that all trustees under the agreement be required to give bond for the faithful performance of their duties; and for general relief. By the amended bill additional trust investments were attacked. New prayers were substituted asking that the defendants be required to answer, to restore to the trust funds the moneys lost by their illegal and negligent conduct; that they be removed; that all trustees be required to give bond; and for general relief.

The plaintiffs in the District Court were but two of the five cestuis. One of the others has appeared in the Common Pleas proceeding and excepted to the trustees' accounts. Certain it is, therefore, that if both courts were to proceed they would be required to cover the same ground. This of itself is not conclusive of the question

---

[14] Compare *Moore's Appeal*, 10 Pa. 435; *McLellan's Appeal* (No. 1), 76 Pa. 231; *Commonwealth* v. *Trout*, 76 Pa. 379.

of the District Court's jurisdiction, for it is settled that where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other.[15] On the other hand, if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other.[16] We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.[17] The doctrine is necessary to the harmonious coöperation of federal and state tribunals.[18] While it has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court,[19] this is

---

[15] *Penn General Casualty Co.* v. *Pennsylvania,* 294 U. S. 189, 195, and cited cases.

[16] *Ibid.*

[17] *Farmers' Loan & T. Co.* v. *Lake Street E. R. Co.,* 177 U. S. 51, 61; *Palmer* v. *Texas,* 212 U. S. 118, 129; *United States* v. *Bank of New York & T. Co.,* 296 U. S. 463, 477.

[18] *United States* v. *Bank of New York & Trust Co., supra,* 478, and cases cited.

[19] *Commonwealth Trust Co.* v. *Bradford,* 297 U. S. 613, 619, and cases cited.

not such a case. No question is presented in the federal court as to the right of any person to participate in the res or as to the quantum of his interest in it. The contentions are solely as to administration and restoration of corpus.

Petitioners insist that *Shelby* v. *Bacon,* 10 How. 56, is conclusive that, under the law of Pennsylvania, the filing of an account on July 7, 1930, did not constitute the institution of a suit by the trustees, did not confer exclusive jurisdiction on the state court and did not bar the subsequent institution of a suit in the federal court for the same relief. In this we think they are in error. What was there said by this court to the effect that the filing of an account in the state court did not constitute a suit and did not confer jurisdiction on the state court, was not necessary to the decision and is not in accord with the law of Pennsylvania as declared by its own Supreme Court.[20] Assuming, however, that the state court had jurisdiction, this court held merely that the plaintiff had a right to establish his claim by suit in the Circuit Court notwithstanding the state court's jurisdiction over the trust. The court was careful to say that it was unnecessary to consider questions which might arise in the exercise of the jurisdiction of the federal court. The decision is in entire accord with many cases which hold that an action in the federal court to establish the validity or the amount of a claim constitutes no interference with a state court's possession or control of a res.

The Common Pleas Court could not effectively exercise the jurisdiction vested in it, without a substantial measure of control of the trust funds. Its proceedings are, as the court below held, quasi in rem, and the jurisdiction acquired upon the filing of the trustees' account is exclusive. The District Court for the Western District of

[20] *Whitney's Appeal,* 22 Pa. 500, 505.

Pennsylvania is without jurisdiction of the suit subsequently brought for the same relief, and the petitioners were properly enjoined from further proceeding in that court.

The judgment is

*Affirmed.*