The Morris Plan Industrial Bank of New York v. Commissioner.
Morris Plan Indus. Bank of New York v. Commissioner
Docket No. 1414.
United States Tax Court
1944 Tax Ct. Memo LEXIS 96; 3 T.C.M. (CCH) 1043; T.C.M. (RIA) 44319; October 5, 1944
*96 Donald Horne, Esq., 111 Wall St., New York, N. Y., for the petitioner. Walt Mandry, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies in income taxes as follows: 1938
$14,549.58
1939
14,651.16
1940
22,402.82 The petitioner claims overpayment in each of the respective years as follows: 1938
$11,792.47
1939
20,436.24
1940
31,965.40
The issues are: (1) whether this Court has jurisdiction to proceed and determine the issues; (2) whether the petitioner was on the reserve or specific charge-off method for treating its bad debts; (3) did the respondent err in disallowing deduction for each of the taxable years representing additions to the reserve for bad debts; (4) if the petitioner is on the specific bad debt method, whether it has established that it is entitled to any deductions during the taxable years for worthless debts; (5) whether petitioner's collections of bad debts constitute taxable income in the year of receipt. The case was submitted upon a stipulation of facts, oral testimony and exhibits. The stipulated facts are incorporated by reference as our findings of fact. Other findings *97 of fact not stipulated we found from the record. Findings of Fact Petitioner is a corporation organized under the Banking Laws of the State of New York with its principal place of business at No. 56 East 42nd Street, New York, New York. It is engaged in making commercial and industrial loans. Its income tax returns for the years in question were filed with the collector of internal revenue for the third district of New York. Petitioner, in its income tax returns for the years 1938, 1939 and 1940, claimed deductions with respect to bad debts in the amounts of $96,110.92, $107,750.87 and $90,842.88, respectively, which amounts were computed in the returns as follows: 1938
Reserve set up during 1938
$192,242.93
Losses on bonds and mortgages charged off
20,900.00
$213,142.93
Less: Reserve set up during 1936
$139,992.76
Less: 1936 Balances Charged-off in 1938
74,385.36
65,607.40
Collections on accounts charged-off
103,239.47
Less: Non-taxable collections
51,814.86
51,424.61
117,032.01
96,110.92
1939
Reserve set up during 1939
$208,061.49
Losses on bonds and mortgages charged off
24,219.36
$232,280.85
Less: Reserve set up in 1937
$168,334.95
Less: 1937 balance charged off
100,222.12
68,112.83
Collections on Accounts Charged-off
94,676.49
Less: Non-taxable collections
38,259.34
56,417.15
124,529.98
$107,750.87
1940
Reserve set up during 1940
$223,532.03
Losses on bonds and mortgages
500.00
$224,032.03
Less: Reserve set up during 1938
$192,242.93
Less: 1938 balances charged off
147,974.10
$ 44,268.83
Less: Collections on accounts charged off
88,920.32
133,189.15
$ 90,842.88
*98 The respondent in his notice of deficiency disallowed the losses on mortgages sold and foreclosed as claimed in the returns for each of the respective taxable years on the ground that such deductions represented an estimate of the losses on mortgage foreclosures. The respondent allowed the actual losses resulting from uncollectible deficiencies on foreclosed mortgages. No issue is raised by the petitioner as to respondent's treatment of these claimed deductions. The respondent disallowed the claimed deductions with respect to bad debts in the amounts of $75,210.92, $83,531.51 and $90,342.88 for the respective taxable years. With respect to the year 1938 the respondent gave the following explanation: "The balance of the deduction, in the amount of $75,210.92, being an addition to the reserve for bad debts you had established and maintained under the method authorized by Article 23(k)-1(a)(2) and Article 23(k)-5 of Regulations 101, is disallowed. The balance in this reserve at the beginning of the year amounted to $308,327.71. This balance, increased by the addition thereto of recoveries on debts previously written off and reduced by debts ascertained to be worthless during the taxable *99 year, results in increasing the reserve as of the end of the year to $365,562.10. This balance is deemed adequate to provide for future bad debts arising out of business transacted prior to the close of the taxable year. Therefore the entire addition thereto is disallowed." Similar explanations were given for the disallowances in 1939 and 1940 with the appropriate changes to reflect the different amounts involved. The petitioner carried on its general ledger a reserve for bad debts as of January 1, 1938 of $308,327.71, which figure has now been stipulated to be $310,325.98. The respondent made the following adjustments for each of the taxable years to the petitioner's reserve for bad debts as it stood on January 1, 1938. 1938
1939
1940
Balance in Reserve beginning of year
$308,327.71
$365,562.10
$394,229.70
Add recoveries in year on debts previously deducted
90,332.90
73,262.43
55,949.38
$398,660.61
$438,824.53
$450,179.08
Less: Debts ascertained to be worthless
33,098.51
44,594.83
68,810.36
Balance in Reserve at end of year
$365,562.10
$394,229.70
$381,368.72
The petitioner in its income tax return for the year 1921 claimed a deduction for bad debts *100 on loans made prior to 1921 and in addition claimed a deduction of $26,435.04, representing a "Reasonable reserve of 1/4 of 1% on loans made during 1921, and so set up on the records". In Schedule A17, attached to that return, the petitioner set up its reserve for bad debts as follows: STATEMENT OF RESERVE FOR LOSSES
ACCOUNT
Balance December 31, 1920 per balance
sheet
$102,466.16
Plus reserve for 1921 as above
26,435.04
Collections of accounts previously
charged off
2,809.26
$131,710.46
Less charge offs as above
81,146.21
Balance December 31, 1921 per balance
sheet
$ 50,564.25
The petitioner, on October 22, 1925, in a protest filed in connection with its 1921-1922 tax liability stated in part as follows: "* * * In 1921 the taxpayer, in accordance with its prior practice, charged off accounts ascertained to be worthless in that year and the amounts so charged off were claimed as deductions in the Income and Profits Tax return for 1921. The taxpayer also deducted in the return for 1921 the addition made to the reserve for bad debts; such deductions being made in accordance with provisions of Revenue Act of 1921 and being allowed for the first time in connection *101 with the return for the year of 1921. "In ascertaining the accounts to be charged off as bad debts in 1921, the taxpayer for the first time adopted the practise of charging off all loans which had been outstanding for at least one year after maturity. The adoption of this rule was the result of much consideration and discussion with other bankers and has been consistently followed since that time. In connection with Income Tax returns, however, the taxpayer since 1921 consistently followed the practise of deducting the net addition to the reserve each year in accordance with provisions of Revenue Act of 1921. "Upon these facts it is submitted that the deduction for bad debts claimed in return for 1921 should be allowed in full. It consisted merely of bad debts which were in 1921 ascertained to be worthless and charged off (all of such debts being in existence on and before December 31st, 1920), together with the addition to the reserve for bad debts as provided for by the statute. This deduction comes clearly within the provisions of the law and the regulations applicable to the returns for the year 1921." In its 1921 return the petitioner deducted the above amount of $26,435.04 *102 representing anticipated future losses on loans made during that year. It has followed that method in all its subsequent returns and the respondent has not questioned that method. The petitioner has never claimed in any of its returns the amount of bad debts ascertained to be worthless or that became worthless during such year. Since 1921 it has never requested permission to change its method of treating bad debt deductions. The volume of industrial loans, the recoveries and charge-offs with respect to such loans are as follows: Year
Volume
Recoveries
Charge-Offs
33
$22,154,437.00
$105,679.35
$314,119.45
34
23,191,048.00
131,775.31
244,217.11
35
24,054,933.00
130,197.74
88,393.40
36
26,480,298.00
111,312.89
58,008.70
37
30,905,653.00
123,130.82
65,563.07
38
36,008,051.00
90,333.00
68,468.00
39
38,741,099.00
88,928.00
96,009.00
40
40,982,663.00
82,491.00
139,049.00
$242,518,182.00
$863,848.11
$1,073,827.73
The uncollected balance on industrial loans at the end of each of the taxable years is as follows: 1938
$19,178,000.00
1939
20,371,000.00
1940
21,855,000.00
For the period 1933 to 1940, inclusive, the petitioner's volume of *103 loans was $242,518,182. Its charge-offs totaled $1,073,827.73, and its total recoveries were $863,848.11, or a net charge-off of $209,979.62. The percentage of net charge-offs to total loans is.000865, or approximately 1/12 of 1 per cent. The petitioner, in its returns for the years 1921 to 1937, inclusive, claimed a total deduction of $2,073,759.57 with respect to bad debts computed as shown in the following schedules: SCHEDULE OF ADJUSTED BAD DEBT DEDUCTIONS -- 1921-1937 INCL.
1921
1922
1923
Reserve set up
26,435.04
34,415.02
47,335.86
Charge-off
39,139.22
39,411.47
26,435.04
73,554.24
86,747.33
Less:
Reserve 2 years prior
26,435.04
Collections on accounts
charged off
25,197.94
25,197.94
30,847.27
57,282.31
Bad debt deduction in return,
as adjusted
26,435.04
48,356.30
29,465.02
1924
1925
1926
Reserve set up
59,698.95
71,907.92
86,183.56
charge-off
36,505.17
54,588.56
129,170.68
96,204.12
126,496.48
215,354.24
Less:
Reserve 2 years prior
34,415.02
47,335.86
59,698.95
Collections on accounts
charged off
21,717.13
56,132.15
20,534.23
67,870.09
20,760.07
80,459.02
Bad debt deduction in return,
as adjusted
40,071.97
58.626.39
134,895.22
*104 1927
1928
Reserve set up
88,163.88
90,474.40
Charge-off
195,268.89
271,934.71
283,432.77
362,409.11
Less:
Reserve 2 years prior
71,907.92
86,183.56
Collections on accounts
charged off 49,846.90
121,754.82
84,430.03
170,613.59
Bad debt deduction in return,
as adjusted
161,677.95
191,795.52
1929
1930
Reserve set up
92,946.62
80,301.87
Charge-off
252,838.64
332,406.48
345,785.26
412,808.35
Less:
Reserve 2 years prior
88,163.88
90,474.40
Collections on accounts
charged off
104,527.38
192,691.26
112,122.45
202,596.85
Bad debt deduction in return,
as adjusted
153,094.00
210,111.50
1931
1932
Reserve set up
76,286.73
95,496.07
Charge-off
409,749.37
292,343.08
486,036.10
387,839.15
Less:
Reserve 2 years prior
92,946.62
80,301.87
Collections on accounts charged off 123,147.86
16,094.48
121,563.98
201,865.85
Bad debt deduction in return,
as adjusted 269,941.62
185,973.30
1933
1934
Reserve set up
110,772.18
115,955.25
charge-off
314,119.45
244,217.11
424,891.63
360,172.36
Less:
Reserve 2 years prior
76,286.73
95,496.07
Collections on accounts
charged off
105,679.35
131,775.31
181,966.08
227,271.38
Nontaxable collections
181,966.08
227,271.38
Bad debt deduction in return,
as adjusted
242,925.55
132,900.98
*105 1935
1936
Reserve set up
120,586.29
141,057.99
Charge-off
88,393.40
58,008.70
208,979.69
199,066.69
Less:
Reserve 2 years prior
110,772.18
115,955.25
Collections on accounts
charged off
130,197.74
111,312.89
240,969.92
227,268.14
Nontaxable collections
112,090.80
128,879.12
69,505.33
157,762.81
Bad debt deduction in return,
as adjusted
80,100.57
41,202.88
1937
TOTAL
Reserve set up
169,267.99
1,507,285.62
Charge-off
65,563.07
2,823,658.00
234,831.06
4,330,943.62
Less:
Reserve 2 years prior
120,586.29
1,196,959.64
Collections on accounts charged off
123,130.82
1,316,791.35
243,717.11
2,513,750.99
Nontaxable collections
74,970.81
168,746.30
256,566.94
2,257,184.05
Bad debt deduction in return,
as adjusted
66,084.76
2,073,759.57
Included in the total deductions of $2,073,759.57 is the estimated reserve set up for 1936 of the sum of $141,057.99 and the estimated reserve for 1937 of the sum of $169,267.99, or an aggregate of $310,325.98 claimed by the petitioner and allowed by the respondent. Furthermore, the collections on accounts do not include the sum of $256,566.94 received *106 in the years 1935, 1936 and 1937 as recoveries on debts previously charged off. During each of the years 1921 to 1937, the petitioner set up on its books an estimated amount against future losses. During that period the petitioner did not claim as a deduction for such years any amounts representing specific bad debts ascertained to be worthless during such years. The deductions claimed were amounts computed with respect to an estimated reserve set up and adjusted under the petitioner's system. The petitioner was using the reserve method and not the specific bad debt charge-off method of treating its bad debt losses. The balance in the petitioner's reserve for bad debts, as of December 31, 1937, was $310,325.98. The respondent, in the exercise of his discretion, determined that the petitioner was not entitled to any deduction representing an addition to reserve for bad debts in any of the taxable years. The reserve existing at the beginning of each of the taxable years was sufficient to take care of the petitioner's bad debt losses without any additions to the reserve for any of the respective parties. Opinion The petitioner contends that although this Court has jurisdiction, *107 it should await the decision of the District Court for the Southern District of New York in a suit which was instituted by the petitioner on a claim for a refund for the taxable years prior to the mailing of the deficiency notice herein by the respondent. The rule relied upon by the petitioner in support of its contention is not applicable here. The suit for refund in the District Court and the proceeding before this Court are in personam for the recovery of money. The settled rule in such cases is that either Court having concurrent jurisdiction may proceed with the litigation until judgment. Penn Co. v. Pennsylvania, 294 U.S. 189, 195; Princess Lida v. Thompson, 305 U.S. 456; cf. Ohio Steel Foundry Co. v. United States, 38 Fed. (2d) 144. Furthermore, the District Court where the refund suit was instituted in the exercise of its judicial discretion has relinquished its jurisdiction in favor of this Court, and enjoined the prosecution of the petitioner's suit for refund. We will therefore proceed to a determination of the controversy on the merits. The principal issue involves the *108 factual determination of the petitioner's tax accounting method with respect to its bad debt losses. The respondent has based his deficiencies on the theory that the petitioner was on the reserve method. The petitioner contends that it used the specific bad debt charge-off method of treating its bad debts. The answer is to be determined from what the petitioner actually did with respect to its bad debts as disclosed by the record. In 1921, which was the first year in which the use of the reserve method was permitted in connection with bad debts, the petitioner claimed as a deduction the unpaid balance on loans made prior to 1921 and in addition claimed and was allowed a deduction in the amount of $26,435.04 as a "Reasonable reserve of 1/4 of 1% on loans made during 1921, and so set up on the records". In each subsequent year it set up an estimated amount for future losses said to have been based on its business experience in connection with its losses on prior loans. To this estimated reserve figure the petitioner made adjustments and the resultant figure was claimed as a deduction in its tax return for that year. For example, it appears from the stipulation that the petitioner claimed *109 a deduction of $66,084.76 in its 1937 income tax return, computed as follows: Reserve set up during 1937
$169,267.99
Charge off - 1935 loans
65,563.07
$234,831.06
Less: Reserve 2 years' prior
$120,586.29
Collections on accounts charged off
123,130.82
$243,717.11
Collections (non-taxable)
74,970,81
168,746.30
Bad debt taken in return as adjusted
$ 66,084.76
It is apparent that the petitioner did not deduct its bad debts ascertained to be worthless and did not report in gross income recoveries on bad debts as it should have done if on the specific bad debt method. The amount claimed in its tax return had no relation to actual charge-offs. Recoveries were never included in gross income. Based on what the petitioner did it is clear that it did not follow the specific bad debt charge-off method. The petitioner concedes that its method was wrong, but argues that since it had never elected the reserve method, respondent has no authority to compel it to adopt that method. We think that although the method used by the petitioner was somewhat irregular, it was in substance the reserve method for treating bad debts and not the specific charge-off method. In 1921 and *110 in all subsequent years it has set up an estimated amount in anticipation of future losses in respect of accounts receivable. In 1921 the petitioner claimed and was allowed a deduction to which it was not entitled if it had not adopted the reserve method. Since 1921 the deduction taken was generally in excess of its bad debts for such year, and it may have enjoyed the benefit of deductions larger than those to which it was properly entitled. The fact that the petitioner adopted the reserve method in its 1921 return, and has since followed that method, constitutes an election of such method. Cf. Momsen-Dunnegan-Ryan Co., 24 B.T.A. 365; Gustave Rader Co., 19 B.T.A. 12. Petitioner, in support of its contention that it was using the specific charge-off method points out that the respondent, in his deficiency notice, has allowed actual losses with respect to its commercial loans. From this the petitioner argues that respondent has used both the reserve method and the specific charge-off method, whereas the tax law permits the use of either method but not both simultaneously. [1] We are not required to determine the correctness *111 of the respondent's action with respect to commercial loans. The petitioner accepted the respondent's treatment of losses on its commercial loans and that issue is not before us. Since petitioner elected the reserve method it is required to maintain that method until it obtains the respondent's permission to change. [2] The petitioner has never sought permission to change its system. It now complains that its method of adjusting its reserve account in view of its large recoveries and the increased tax rates operates to its disadvantage. There may be some substance to its complaint. Years prior to the taxable years in question are foreclosed by the statute. Whatever apparent inequity may result from adherence to its own system of treating its bad debt losses has been brought about by the petitioner itself. The petitioner says the respondent has accepted its accounting system. It may be that respondent should have been more diligent. However, the statutory requirements can not be overridden by the fact that the respondent has failed to correct the petitioner's errors in other years. Kahn v. Commissioner, 108 Fed. (2d) 748; Askin & Marine Co. v. Commissioner, 66 Fed. (2d) 776, 777. *112 We conclude that the respondent has properly determined that the petitioner was on the reserve method of treating its bad debt losses. Since the respondent, in his deficiency notice, did not include the above sum of $256,566.94, charged off and recovered before 1938, as a part of the petitioner's reserve at the beginning of the taxable year 1938 or in adjusting the reserve for the taxable years 1939 and 1940, that amount has no bearing upon the issues before us. Nor are we required to pass on the merits of the petitioner's contention that, for the taxable years 1938, 1939 and 1940, it is entitled to the benefits of section 22(b)(12) of the Revenue Act of 1938 and the Internal Revenue Code as added by section 116 of the Revenue Act of 1942, excluding from gross income recoveries from bad debts to *113 the extent therein provided even though the petitioner is held to be on the reserve method respecting bad debt losses. Using the figure of $310,325.98 as the petitioner's reserve at the beginning of January 1, 1938, ignoring all recoveries on account of debts previously charged off, and charging that reserve with the deductions claimed in the returns for the respective taxable years, the balance in the petitioner's reserve at the end of December 1940 would be $61,240.67, computed as follows: 1938
1939
1940
Reserve as of Jan. 1
$310,325.98
$235,115.06
$151,583.55
Less: Deductions claimed in the return
75,210.92
83,531.51
90,342.88
$235,115.06
$151,583.55
$ 61,240.67
Petitioner's business experience shows that for a period of 8 years, 1933 to 1940 in clusive, the percentage of net charge-offs to total loans was.000865 or approximately 1/12 of one per cent. The uncollected balance on industrial loans at the end of each of the taxable years was as follows: 1938, $19,178,000; 1939, $20,371,000; 1940, $21,855,000. Applying the ratio of.000865, it appears the average net loss for the three taxable years is approximately $18,000 per year. We are convinced that respondent's *114 determination that the reserve at the end of the respective years was adequate to take care of the petitioner's future losses, and his denial of additions to the reserve was a sound and not an arbitrary exercise of the discretion vested in him. We find no merit in the petitioner's contention it is entitled to deduct an addition to its reserve to the extent of the debts becoming worthless in the taxable year regardless of the size of its reserve. The petitioner refers us to no authority in support of such theory. The decisions are to the contrary. Cf. Fibre Yarn Co., 10 B.T.A. 479; Art Metal Construction Co. v. United States, 17 Fed. Supp. 854. Petitioner claims overpayment in the respective taxable years. No claim is made of any erroneous inclusion of items in gross income. The basis of the respective claims is that the petitioner is entitled to greater debt deductions than were claimed on its returns. Since we have sustained the respondent's disallowance of any additions to the reserve for bad debts, the claims for overpayment necessarily fall. Decision will be entered for respondent. Footnotes
1. Sec. 23 (k), Revenue Act of 1938 as to the taxable year 1938. Sec. 23 (k), Internal Revenue Code↩, as amended by Sec. 124, Revenue Act of 1942 as to taxable years 1939 and 1940. 2. Regulations 101, Art. 23 (k)-1 as to the year 1938. Regulations 103, Sec. 19.23 (k)-1 as amended by T.D. 5234↩ (C.B. 1943 - pages 119-124) as to the years 1939 and 1940.