**James R. TURTON, Plaintiff-Appellee,**

v.

**Margaret R. TURTON et al., Defendants,**

**Margaret R. Turton, Defendant-Appellant.**

No. 79–2951.

United States Court of Appeals, Fifth Circuit. Unit A

April 20, 1981. Rehearing and Rehearing En Banc Denied May 27, 1981.

Thompson & Knight, William R. Wright, Molly Steele Bishop, Dallas, Tex., for defendant-appellant.

Vetter, Bates & Tibbals, P.C., James G. Vetter, Jr., Dallas, Tex., for plaintiff-appellee.

James R. Turton, pro se.

Before WISDOM, RUBIN and SAM D. JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

In this action by a decedent's heir against the administrators of the decedent's estate in Belize, we hold that the judgment of the district court exceeded its subject matter jurisdiction and that the court lacked personal jurisdiction over the party it attempted to bind.

This case concerns the assets of the estate of Robert Sydney Turton, Sr. Turton was a British subject and a resident of British Honduras (now the country of Belize), where he died in 1955. The decedent's will was admitted to probate in a primary administration in the Supreme Court of British Honduras, Probate Side, and in ancillary administrations in probate courts in Illinois, New York, and Canada. In 1971 all of the interested parties made a settlement agreement concerning the estate. All parties agreed not to contest the validity of the will. The agreement divided the decedent's estate into "British Honduras assets" and "North American assets" and stipulated the percentage share of each party in each set of assets. The Illinois and Canadian proceedings were closed in 1971. The New York ancillary administration was closed in 1973, after all North American assets then known were liquidated and the proceeds distributed according to the terms of the 1971 agreement. The primary administration proceeding is still open in the Supreme Court of Belize. There have been only small distributions of the British Honduras assets, and many of those assets are still unliquidated.

The plaintiff and appellee in this case is James Turton, a son of the decedent and a citizen and resident of Texas. In 1975 the plaintiff discovered that the decedent's estate still held stock in a number of United States and Canadian corporations. He brought this suit in the United States District Court for the Northern District of Texas, alleging that this stock should have been liquidated and sold as North American assets. The defendants named in the original complaint were Margaret Turton, the appellant, and Aura Jones, both daughters of the decedent, co-administrators of his estate, and resident citizens of Belize. The plaintiff asserted diversity of citizenship as the basis for federal jurisdiction.[1] No assets of the estate have ever been located in Texas.

Margaret Turton and Aura Jones successfully moved for their dismissal for lack of personal jurisdiction over them. In the meantime, however, Robert Turton, Jr., another son of the decedent and a resident citizen of Belize, succeeded Aura Jones as co-administrator and filed an answer to the complaint. The plaintiff amended his complaint to name as defendants Robert Turton, Jr. and the estate.

The district court entered a default against Robert Turton, Jr. for failing to answer the plaintiff's interrogatories. The court then took evidence as to the total value of the decedent's estate, including land, timber and other unliquidated assets in Belize. It found[2] that the estate's British Honduras assets came to $18,018,321 (U.S. dollars), and that the estate's North American assets came to $3,836,683. Based on these calculations and the formula provided in the 1971 agreement, it found that the plaintiff was due $497,604,[3] plus interest, attorney's fees, and costs, from the assets of the estate. The court found that the Estate of Robert Sydney Turton owned the stocks as alleged by the plaintiff and

---

1. Nominal defendants in the suit are the corporations issuing the stock, all of which are domiciled in states other than Texas or in Canada. Jurisdiction thus rests on 28 U.S.C. § 1332(a)(3) (1976). Neither the existence of diversity nor the jurisdictional amount in controversy is challenged.

2. The district court made no express findings of fact. From the record, however, it is clear that these calculations must have formed the basis for the court's judgment. The principal dollar amount of the judgment ($497,604) corresponds exactly with the result of the calculations presented to the court by the plaintiff, appearing as a witness.

3. Under the 1971 agreement, the plaintiff is entitled to 2.5 percent of the British Honduras assets ($450,458) and 4.5 percent of the North American assets ($172,650). He received $125,504 in the New York administration.

held: "That the plaintiff is entitled, and it is so ordered, that he be placed in possession and control of the foregoing stated shares of stocks and dividends relating thereto, and is hereby authorized to sell and dispose of said shares of stock to satisfy this judgment."

Margaret Turton, without waiving her earlier dismissal, moved for modification of this judgment on the grounds that the district court lacked subject matter jurisdiction to render such relief and that it lacked personal jurisdiction over the estate. This appeal is from the denial of that motion.

The problem before us is how far a federal court, sitting in diversity, may go in resolving a dispute over an estate. As a general matter a diversity court has jurisdiction to entertain any civil action that could be brought in a state court, provided only that the requisite diversity and amount in controversy are present.[4] One notable exception exists, however, when a state or foreign court has assumed the administration of an estate in probate. As the Supreme Court has held,

> federal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees, and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court.

*Markham v. Allen*, 1946, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256, 259, quoting *Waterman v. Canal-Louisiana Bank & Trust Co.*, 1909, 215 U.S. 33, 43, 30 S.Ct. 10, 12, 54 L.Ed. 80, 84. The rule is easier to apply than to state. Under the heading of "establishing claims", for example, a creditor may obtain a federal judgment that he has a valid claim against the estate for one thousand dollars, or a devisee may obtain a declaratory judgment that a probated will entitles him to twenty percent of the net estate. What the federal court may *not* do, however, is to order payment of the creditor's thousand dollars, because that would be an assumption of control over property under probate. Similarly, the court may not find that the devisee's twenty percent share is worth $20,000, because it is the province of the probate court to determine the dollar amount of the net estate after liquidating assets and paying claims. Instead, the federal court is limited to declaring the validity of the asserted claims, leaving the claimants to assert their federal judgments as res judicata in the probate court. This is no baseless formalism; on the contrary, it is compelled by the same considerations of fairness to all claimants that require that a probate court obtain exclusive jurisdiction over the estate in the first place. It may turn out that, after actual liquidation of assets, the estate comes to less than the federal court's estimate; it may even be insufficient to pay all debts in full. The federal claimant cannot deprive competing claimants of their just due by obtaining a premature distribution or valuation of estate assets from the federal court. *Markham; Waterman; Akin v. Louisiana National Bank*, 5 Cir. 1963, 322 F.2d 749; *Robinson v. Georgia Savings Bank & Trust Co.*, 5 Cir. 1939, 106 F.2d 944; see *Princess Lida v. Thompson*, 1939, 305 U.S. 456, 466–67, 59 S.Ct. 275, 280–281, 83 L.Ed. 285, 291–92; *Commonwealth Trust Co. v. Bradford*, 1936, 297 U.S. 613, 619, 56 S.Ct. 600, 602, 80 L.Ed. 920, 925.

With this rule in mind, it is readily apparent that the remedy granted in this case exceeded the subject matter jurisdiction of the district court. Not only did the court order actual transfer of property under probate,[5] but it assigned dollar values to unliquidated estate assets located in Belize. If those assets are eventually sold for less

---

**4.** Of course, we do not mean to deny the validity of the various abstention doctrines. In abstention cases the federal courts *have* jurisdiction, but they decide in their equitable discretion not to *exercise* jurisdiction.

**5.** The plaintiff contends that the stock shares are not under the control of the Belize court.

We disagree. The contention rests on the undisputed fact that the shares are "North American assets" as defined in the 1971 agreement. That designation, however, is one of convenience, made to facilitate application of the distribution formula in the agreement. It is not

than the district court's appraisal of their value, or if a substantial part of the proceeds go to satisfy the estate's debts, the plaintiff would have received more than his share of the estate under the 1971 agreement.

The plaintiff seeks to escape the rule of *Markham v. Allen* by describing his suit as an action for breach of the 1971 agreement rather than an action on the decedent's will. Assuming that this is true, it is beside the point. The feature that controls federal jurisdiction in such cases is the effect a judgment would have on the jurisdiction of the probate court. Hence, for example, a suit against an executor personally for malfeasance is beyond federal jurisdiction, if it requires a premature accounting of an estate still in probate. *Starr v. Rupp,* 6 Cir. 1970, 421 F.2d 999. Here the district court attempted to put a value on assets of the estate, attempted to put the plaintiff in possession of those assets, and authorized the plaintiff to make a distribution of those assets. It makes no difference, then, on what sort of theory the plaintiff sues here; the district court lacked jurisdiction to render this relief under any theory because the relief is an impermissible interference with the Belize probate proceedings.

We also agree with the appellant that, subject matter jurisdiction aside, the district court went too far when it attempted to bind the estate in its judgment. The plaintiff argues that the court had personal jurisdiction over the estate because Robert

Turton, Jr. filed an answer in his capacity as co-administrator. But in Texas law,[6] an administrator appointed by a foreign court has no capacity to sue or be sued in Texas courts as administrator, even if he consents. *Faulknor v. Reed,* Tex.Civ.App. 1922, 241 S.W. 1002, 1007; *Terrell v. Crane,* 1881, 55 Tex. 81; *Minga v. Perales,* Tex.Civ.App. 1980, 603 S.W.2d 240; *Eikel v. Bristow Corp.,* Tex.Civ.App. 1975, 529 S.W.2d 795, 800–01. Hence, Robert Turton, Jr. was without power to submit the estate to the district court's jurisdiction.

The judgment of the district court is VACATED. The case is REMANDED for further proceedings consistent with this opinion.

a permanent surrender of jurisdiction. When the British Honduras court, as the domiciliary jurisdiction, appointed administrators over the decedent's estate, those administrators immediately acquired title to all of the decedent's personal property, wherever located. 31 Am. Jur.2d Executors & Administrators § 689. When probate courts in New York, Illinois, and Canada opened ancillary administrations, title to personal property in those jurisdictions revested in the respective ancillary administrators during the pendency of those actions. *Id.* § 692. All ancillary administrations are now closed, however. It is immaterial whether the New York court *should have* liquidated and distributed the stock, as the plaintiff contends; the point is that it *did not* do so. When an ancillary administration closes without disposing of assets, title to those assets does not

wander inchoately, to be snatched up by the first claimant; logically, it must revest in the Belize administrators, under the control of the sole probate court still exercising jurisdiction over the estate. *See also id.* §§ 706, 711. If the plaintiff wishes to seek immediate distribution of these remaining North American assets, he may seek that remedy from the Belize court, or he may seek to open or reopen ancillary administrations in any appropriate jurisdictions.

6. Fed.R.Civ.P. 17(b) provides that the capacity to be sued of an individual acting in a representative capacity shall be determined by the law of the state in which the district court is held. *See generally* 3A J. Moore, Federal Practice ¶ 17.19; 6 C. Wright & A. Miller, Federal Practice & Procedure § 1565.