**I.J.A. INC. d/b/a Northeast Jet Company, Inc. and Earl Holtz, Plaintiffs,**

v.

**MARINE HOLDINGS LTD., INC., The Bank of Nova Scotia, Sheldon Mintzberg, et al., Defendants.**

**Civ. A. No. 81–2480.**

United States District Court, E. D. Pennsylvania.

June 24, 1981.

Arthur Alan Wolk, Philadelphia, Pa., for plaintiffs.

TROUTMAN, District Judge.

Now, according to the allegations of the complaint, in January, 1981, defendant Marine Holdings Ltd. delivered to the plaintiff Northeast Jet Company a 1967 Gates Lear jet which, pursuant to an agreement between the parties, Northeast utilized in its air charter business. Marine Holdings agreed to pay for all fuel, oil, landing fees, taxes, labor, parts, maintenance, management fees, et cetera in return for a share of the profit. By May, 1981, these charges totaled over $60,000.

On or about May 8th, defendant Mintzberg, an officer of Marine Holdings, in payment thereof executed a series of five personal checks amounting to slightly over $56,000 payable to the order of Northeast as well as a security agreement covering the aircraft. Mintzberg later obtained from defendant, the Bank of Nova Scotia, a letter unconditionally guaranteeing payment of the checks in return for which the plaintiff cancelled the security agreement. This was necessary to accomplish the transfer of the Lear jet to Canada, its deregistry in the United States and its registry in Canada.

However, the defendant Mintzberg later tried to stop payment on all of the checks and instituted litigation in this Court, docketed as Civil Action No. 81–2243, seeking a TRO and preliminary relief to enjoin Northeast from endorsing or negotiating the checks. Upon appearing before the Court on June 4, 1981, the parties entered into extended settlement negotiations lasting for the better part of two days. Subsequently, the plaintiffs in that suit withdrew the complaint pursuant to Federal Rules of Civil Procedure 41(a). The defendants in that litigation, now the plaintiffs in the instant suit, have instituted this suit to recover compensatory damages exceeding $38,000, which represents various maintenance and repair service costs, as well as expenses incurred in defending the prior action, which the present plaintiffs consider to have been pressed as part of an "illegal, unlawful, wicked and malicious conspiracy" to withhold payment of funds.

Most importantly for present purposes, plaintiffs seek to enjoin the defendant from proceeding with litigation which the defendants have commenced in the Superior Court of Canada, Province of Quebec, District of Montreal and docketed as Civil Action No. 500–05–007553–819, which involves a pre-judgment garnishment procedure and an attempt to enjoin the bank from honoring its unconditional letter of credit. We are advised that the Canadian court has scheduled a hearing in this matter tomorrow, Thursday, June 25th, 1981, hence the need for immediate relief in this Court. Accordingly, the plaintiffs seek a temporary restraining order, and ultimately a preliminary and a permanent injunction, enjoining the defendants from continuing the Canadian litigation pending the outcome not only of the matter presently before this Court but also the conclusion of the entire lawsuit.

To obtain injunctive relief, the plaintiffs must demonstrate irreparable injury that will occur if relief is not granted until a final adjudication on the merits, a reasonable likelihood of success on the merits, and the improbability of harm to the nonmoving party specifically and the public generally. See *Continental Group, Incorporated v. Amoco Chemical Corporation,* 614 F.2d 351

(3d Cir. 1980) and *Accord, Kennecott v. Smith Corp.,* 637 F.2d 181 (3d Cir. 1980), *Nissin Foods (USA Company) v. National Labor Relations Board,* No. 81–2113 (Eastern Dist. of Pa., May 23, 1981), *Perkins v. Wagner,* No. 81–484 (Eastern Dist. of Pa., May 23, 1981). Most recently, see *EHI of Florida, Inc. v. Insurance Company of North America,* 652 F.2d 310 (3d Cir. 1981).

█ In the case at bar, we conclude that the plaintiff has failed to demonstrate the requisite likelihood of success on the merits. Ordinarily, one court will not interfere with proceedings in another court. See *Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964). This principle enjoys a long history of acceptance. See *McKim v. Voorhies,* 11 U.S. (7 Cranch) 279, 3 L.Ed. 342 (1812), *Diggs v. Wolcott,* 8 U.S. (4 Cranch) 179, 2 L.Ed. 587 (1807). Where both the federal and state courts have jurisdiction, both lawsuits may continue until a party in one of them obtains a judgment, which may then be res judicata in the other. See *Princess Lida v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

A finding that the second action is duplicative and therefore vexatious does not require a different result, for an injunction interferes with the comity which federal courts owe to courts of other jurisdictions, particularly a court in a foreign jurisdiction. *Compagnie Des Bauxites de Guinea v. Insurance Company of North America,* 651 F.2d 877 (3d Cir. 1981). Similarly, directing the injunction towards the parties, that is, the litigants as opposed to the foreign court itself, will not alter this conclusion, for as the Court of Appeals recently noted in the case cited, "restraining a party from pursuing an action in a court of foreign jurisdiction involves a delicate question of comity and therefore 'requires that such action be taken only with care and great restraint.'" See pages 18 and 19 and footnote 10 in the foregoing Bauxites case. Also, see *Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.,* 412 F.2d 577, 578 (1st Cir. 1969).

█ In the case at bar, the plaintiffs allege vexatious conduct on the part of the defendants, loss of credit, financial losses, inconvenience and harassment which the defense of the Canadian action entails. Regrettably for the plaintiffs, the Court of Appeals for this circuit has expressly rejected this argument in the very recent case above cited, the Bauxites case. Accordingly, plaintiffs' motion for a temporary restraining order will be denied.

This then brings us to the plaintiffs' request for a preliminary injunction following the decision on the application for a TRO. A reading of the Bauxites case so recently decided by the Circuit Court, as I have stated, June 10th, 1981, discloses that there the District Court had entered an order enjoining the defendants from maintaining an action commenced by them in London. The District Court based its conclusions upon express findings that the action instituted in the English Courts was duplicative, harassing and vexatious.

The Circuit Court, referring to the findings of the District Court, concluded that such findings or such finding, as the case may be, "does not affect our decision." It also stated specifically, as previously noted, and we quote, "Likewise, there is no difference between addressing an injunction to the parties and addressing the foreign court itself." The court continued, "Enjoining the parties necessarily affects the court and compromises 'the comity which the Federal Courts owe to the Courts of other jurisdictions.'"

Thus, if following a hearing on plaintiffs' application for a preliminary injunction, this Court were to find that the Canadian litigation is duplicative, involving the same parties, involving the same issues, vexatious and of a harassing nature, damaging to the plaintiffs' reputation and to its line of credit and business reputation as alleged throughout plaintiffs' complaint, we would be obliged nonetheless to deny injunctive relief, either preliminary or permanent.

Just as the Circuit Court there reversed the order of the District Court granting a permanent injunction restraining the prosecution of the suit in England in the High Court of Justice, Queens Bench Division, so

here this Court would suffer reversal were it to grant injunctive relief restraining the prosecution of the suit in the Superior Court of Canada, Province of Quebec, District of Montreal under the circumstances here alleged.

Accordingly, an appropriate order will be entered denying the plaintiffs' application for a TRO and a preliminary injunction and a permanent injunction.

There are other issues remaining in the case, but they are not the subject of the injunctive relief. Damages, for instance, are alleged and remain as part of the case. I haven't dismissed the case.