ALABAMA VERMICULITE COR-
PORATION

v.

J. T. PATTERSON, W. A. Patterson
and T. M. Patterson.

Vivian Campbell PATTERSON

v.

ALABAMA VERMICULITE CORPORA-
TION, W. J. Theo, Joe Theo, and Olin
Theo, partners d/b/a Theo Bros. Con-
struction Co.

Civ. A. Nos. 1313, 1747.

United States District Court
W. D. South Carolina,
Greenville Division.

Dec. 15, 1955.

Edward P. Riley, Greenville, S. C., R. L. Gray, Laurens, S. C., for plaintiffs.

Alfred F. Burgess, Wyche, Burgess & Wyche, Greenville, S. C., John H. Bishop, Bishop, Burdett, Falasz & Doherty, Chicago, Ill., for defendants.

WILLIAMS, District Judge.

As more fully appears herein, Civil Action No. 1747 is being consolidated with Civil Action No. 1313, and this Order is entered for the purpose of disposing of the issues presently pending before this Court in both actions.

This matter was heard before the Court at Greenville, S. C. on June 22, 1955 on the following motions or pleadings:

1. Motion of plaintiff in Civil Action No. 1747 for an order remanding said case to the Court of Common Pleas for Laurens County.

2. Rule to show cause issued by this Court on May 5, 1955 in Civil Action 1747 why the temporary restraining order issued by Honorable E. H. Henderson on March 17, 1955 should not be vacated or set aside, or, in the alternative, why plaintiff should not be required to post bond.

3. Motion by Alabama Vermiculite Corporation in both causes (Civil Action 1313 and Civil Action 1747) for an order under Rule 42 of the Federal Rules of Civil Procedure, 28 U.S.C.A. consolidating said actions for trial.

4. Rule to show cause issued by this Court on June 14, 1955 upon petition of plaintiff in Civil Action 1313, why Vivian Campbell Patterson should not be made a party-defendant to Civil Action 1313; why J. T. Patterson, W. A. Patterson, T. M. Patterson and Vivian Campbell Patterson should not be required to answer or otherwise plead to the petition; why this Court should not take jurisdiction of the issues raised by said petition, i. e., whether or not petitioner has committed waste on the property involved as to all of said parties and, if so, whether or not said acts of waste constitute a breach of the lease which would entitle any of said parties to an injunction or cancellation of the lease; why all said parties should not be enjoined from prosecuting any cause of action in any other jurisdiction for alleged waste, and for impounding a sum out of the share of rents of T. M. Patterson, husband of Vivian Campbell Patterson, for protection of her inchoate right of dower.

In this order, Alabama Vermiculite Corporation will be hereafter referred to as Alabama; J. T. Patterson, W. A. Patterson and T. M. Patterson as the Pattersons; Mrs. Vivian Campbell Patterson, the wife of T. M. Patterson, as Mrs. Patterson; W. J. Theo, Joe Theo and Olin Theo, partners d/b/a Theo Bros. Construction Co., as Theo Bros.; and the proceedings instituted in the Court of Common Pleas for Laurens County, South Carolina will be hereinafter referred to as the State Court proceedings.

Issues

The various pleadings and motions made by the parties raise the following issues, which have been supported by affi-

davits on both sides, oral argument and supporting briefs:

(a) Was the action instituted by Mrs. Patterson, a citizen of the State of South Carolina, properly removed from the State Court in view of the fact that the Theo Bros., also citizens of South Carolina, were named as additional parties defendant?

(b) If properly removed, should that action be consolidated with Civil Action No. 1313—the original action brought in this Court by Alabama?

(c) Should a percentage of the royalties accruing to T. M. Patterson, one of the lessors, be impounded with the Clerk of this Court for the protection of his wife's inchoate right of dower in that property, pending final determination of this issue?

(d) On the showing made, is Mrs. Patterson entitled to a temporary injunction or restraining order enjoining Alabama from committing alleged acts of waste on the premises involved, including the mining or removal of vermiculite ore from said premises?

(e) Should Mrs. Patterson be made a party-defendant to Civil Action 1313?

(f) Should the Pattersons and Mrs. Patterson be required to litigate in the proceedings now before this Court the issue of whether or not Alabama has committed waste on the property involved as to all of said parties and enjoined from prosecuting any cause of action for alleged waste in any state or federal court other than the pending Civil Action No. 1313 now before this Court?

Facts

This case has been before this Court on two previous occasions, the disposition of the issues previously presented being covered by orders entered by this Court on April 20, 1954 and on April 21, 1955.

In the order of April 20, 1954, this Court found that there was a validly existing lease between Alabama and the Pattersons; that said lease had not been breached by Alabama (lessee), but had been breached by the Pattersons

(lessors); that Alabama was entitled to exclusive possession of the leased premises for the purpose of mining vermiculite ore therefrom.

In the order of April 21, 1955, this Court construed certain provisions of the lease that had been questioned by the Pattersons and also disposed of a contempt citation brought by Alabama against the Pattersons for unwarranted interference with exclusive possession granted to Alabama under the provisions of the lease. Both orders retained jurisdiction to enforce compliance with the provisions of the orders.

No useful purpose would be served in this order in reviewing in detail the facts that were marshalled in connection with the two previous hearings, other than to point out that the issue of waste was submitted to this Court in the second hearing and was withdrawn by the Pattersons at a time when Mrs. Patterson, wife of T. M. Patterson, had a suit pending in the State Court, in which suit she sought to adjudicate the same question of waste that was withdrawn from the proceeding in this Court.

In originally injecting the issue of waste in Civil Action 1313, the Pattersons presented to this Court affidavits of the following persons: R. M. Biddle, James B. Stribling, J. L. Bishop, C. L. Robertson and T. M. Patterson. Further comment will be made on the affidavit of R. M. Biddle, but it is worthy of note here that the same is dated February 25, 1955, and is taken before Robert Gray, Notary Public for South Carolina, on February 25, 1955. Mr. Gray is one of the attorneys of record for the Pattersons in the issues now before this Court.

The action brought by Mrs. Patterson in the State Court made Alabama a party defendant and also named Theo Bros. as party defendants. Theo Bros. were employed by Alabama in the mining of the leased premises and are all citizens and residents of the State of South Carolina. The State Court action alleged in substance that Mrs. Patterson was the wife of T. M. Patterson who was the owner of an undivided one-third interest in the

leased premises; that her husband with the other joint tenants executed the lease in controversy and that she had not relinquished her dower rights in the premises. The gist of the complaint is contained in the following paragraphs:

"7. That the defendant, Alabama Vermiculite Corporation, acting by and through its agents and particularly, its agents, the defendants, W. J. Theo, Joe Theo and Olin Theo, d/b/a Theo Bros. Construction Co., and other agents and servants unknown to plaintiff, they acting under the immediate instructions and control of said L. L. Marshall, Mining Superintendent of the defendant, Alabama Vermiculite Corporation, and under rights claimed through the instrument described in Paragraph 6 of this Complaint, has committed acts of waste of a high and aggravated nature to the great detriment, depletion and diminution, past and future, of plaintiff's inchoate dower rights as hereinafter described.

"8. That the said defendant, Alabama Vermiculite Corporation, and its agents, the defendants, W. J. Theo, Joe Theo and Olin Theo, d/b/a Theo Bros. Construction Co., and other agents and servants unknown to plaintiff, have removed or had removed great and valuable deposits of vermiculite ore from the premises described; that the said defendant, Alabama Vermiculite Corporation, threatens to remove or have removed still more of said ore from the said premises. See plaintiff's Exhibits 'B' and 'C'; that the defendant, Alabama Vermiculite Corporation, has cut roads and highway through said premises unnecessarily insofar as its mining activities are concerned and without regard for the preservation of the premises, and without regard to the efficient location of said roads and highways; that moreover, it has cut and otherwise destroyed valuable timber from said premises and that it has caused to be torn down fences enclosing pastures and other farm facilities; that furthermore, the said defendant, Alabama Vermiculite Corporation, is attempting to eject plaintiff from her home, referred to in Paragraph 5 hereof.

"9. That, as plaintiff is informed and believes, the defendant has conducted its mining operations in an extravagant, inefficient, reckless, willful, wanton and negligent manner, with an utter disregard for the rights of plaintiff, in that it has had its mining operations conducted by agents and servants who were either ignorant of mining operations which pertain to vermiculite ore, or else were wantonly indifferent to the efficient and maximum production of refineable vermiculite ore. (See plaintiff's Exhibit 'D' hereto annexed and made a part hereof); that moreover, it has discarded, as being worthless, and in such a manner as not to be recoverable, except at a prohibitive expense, great quantities of ore which could have been salvaged and refined. (See same exhibit.)"

On the basis of the above allegations, Mrs. Patterson prayed for an accounting, for an injunction against the alleged waste and for a decree impounding a sum of money equivalent to her inchoate right of dower.

Attached to said complaint was an affidavit purported to have been sworn to by R. M. Biddle on February 25, 1955, before W. K. Cox, Jr., Notary Public for South Carolina. W. K. Cox, Jr. is one of the attorneys of record for Mrs. Patterson in the State Court suit (Civil Action 1747). This affidavit is *verbatim, literatim, et punctatim* with the affidavit of Biddle filed by the Pattersons on the issue of waste which they raised in the original suit (Civil Action 1313) and asked this Court to permit them to withdraw.

On this complaint and affidavit, Mrs. Patterson, through her attorneys, obtained a temporary restraining order

from Honorable E. H. Henderson dated March 17, 1955, without notice and without bond, enjoining Alabama from "the further mining or removal of vermiculite" from the leased premises.

Even though all of the interested parties except Mrs. Patterson were before this Court and this Court then had jurisdiction of the leased premises, neither this Court nor Alabama was advised of the filing of the State Court action or the issuance of the restraining order until after this Court had, by order dated April 21, 1955, disposed of the issues then pending before it involving the construction of the lease and the citation for contempt. The Court is convinced that the Pattersons knew of the State Court proceeding in Mrs. Patterson's name which involved the issue of waste at the time they asked this Court, through their attorneys, to permit them to withdraw the issue of waste from further consideration of this Court. The alleged waste as to Mrs. Patterson involved only a contingent dower interest of an undivided one-third of her husband, T. M. Patterson, one of the lessors of the leased premises.

Had this Court known at the time it entered the order of April 21, 1955 of the proceedings that had been taken in the State Court, it undoubtedly would have dealt with the situation then existing and in a more positive manner.

The summons in the State Court proceeding is dated March 17, 1955, and requires the defendants to answer within twenty days after service. Said action was lodged in the Sheriff's office of Laurens County on the same day, but for some strange, unexplained reason, the rule to show cause, also dated March 17, 1955, was returnable before the State Court on May 9, 1955, almost two months after the order was obtained and long after the summons was returnable, had the same been served promptly as it should have been. Such an order as was signed by Judge Henderson on March 17, 1955 is an extraordinary and drastic order. It is reasonable to assume that had he known at the time it was entered of the proceedings then pending before this Court, he undoubtedly would not have signed the order which he did. See Sparrow v. Nerzig, 1955, 228 S.C. 277, 89 S.E. 2d 718.

Another strange circumstance which convinces the Court that the Pattersons and Mrs. Patterson were not acting in good faith under the circumstances is the fact that the order of this Court dated April 21, 1955 was turned over to the United States Marshal for service on the Pattersons on the 23rd day of April, 1955. He effected service on J. T. Patterson and W. A. Patterson promptly on April 25, 1955, but could not locate T. M. Patterson, husband of Mrs. Patterson, plaintiff in the State Court case. While the Marshal was attempting to make service on him, the summons and complaint and rule to show cause in Mrs. Patterson's suit was served on April 26, 1955. Immediately thereafter, T. M. Patterson made himself available to the Marshal on April 28, 1955 for the service of the Federal Court order of April 21, 1955.

As soon as Alabama was served with the summons and complaint and a copy of the rule to show cause entered in the State Court, it removed that action to the Federal Court by appropriate removal proceedings, said case now being docketed in this Court as Civil Action 1747, and obtained the rule to show cause hereinabove referred to dated May 5, 1955, why the temporary restraining order of Judge Henderson should not be vacated or Mrs. Patterson required to post bond.

## Findings

(a) Was the State Court proceeding properly removed to this Court?

The complaint filed by Mrs. Patterson named as co-defendants three agents of Alabama who were employed in the mining of the leased premises and who are citizens of South Carolina (as is Mrs. Patterson).

Nonetheless, Alabama has argued quite persuasively that the citizenship of these agents, Theo Bros., may be disregarded by this Court for purposes of determin-

ing whether the action was properly removed here.

28 U.S.C.A. § 1441(c) provided as follows:

> "(c) Whenever a separate and inpendent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

It seems clear from an analysis of Mrs. Patterson's complaint that she has stated two separate and distinct causes of action within the meaning of 28 U.S.C.A. § 1441(c). The first action arises strictly under the terms of the lease itself. Mrs. Patterson alleges that her inchoate right of dower is being gradually diminished by the removal of vermiculite ore from the premises leased by her husband and the other lessors, and that this Court should impound a sufficient percentage of the royalties arising from that mining to protect her dower right in the land. This right is totally apart from the question of improper or negligent mining and is basically a controversy between Mrs. Patterson and her husband. In this connection, it is well to point out that the lease between the Pattersons (as lessors) and Alabama (as lessee) gave Alabama exclusive possession of the premises and the Pattersons agreed to "warrant and defend the premises to the lessee (Alabama) against all claims and demands of all persons." See Paragraph 9 of the lease between the Pattersons and Alabama dated May 22, 1951. In the first cause of action the Theos would be and are improper parties, but they might be proper parties to the second action. This first type of action is clearly illustrated by the case of B. H. & M. Oil Co. v. Graves, 1930, 182 Ark. 659, 32 S.W.2d 630. In that case the wife whose dower right was involved brought this action against her husband and his grantee alleging that the husband had conveyed his interest in certain oil lands which he had owned during their coverture to the oil company; that the oil company was extracting oil from the land; that she was entitled to the impounding of a portion of the royalties for the protection of her right of dower. No allegation or suggestion was made that the oil company was improperly or negligently extracting the oil. The Supreme Court of Arkansas held that the plaintiff was entitled to the impounding of a percentage of the royalties arising from the extracted oil to protect her inchoate right of dower. The court said at page 631 of 32 S.W.2d:

> "* * * in the instant case, the only value the land has is the gas and oil, and if that is permitted to be disposed of by the husband without protecting the inchoate dower right of the wife, she would thereby be deprived of the entire value of the land."

To the same effect is Tatum v. Tatum, 1924, 174 Ark. 110, 295 S.W. 720, 53 A. L.R. 306, and Cf. Brown v. Brown, 1913, 94 S.C. 492, 78 S.E. 447.

In addition to this cause of action alleged against Alabama (but not against Theo Bros.) there is a second cause of action based upon the alleged wasteful and negligent manner in which the vermiculite ore was mined from the leased premises. If any cause of action is stated against the Theo Bros. at all, it must be based on this second theory. They could not be parties to the first cause of action since that action is contractual in nature and they were not parties to the lease. Their only possible liability would arise from negligent mining of the premises.

We thus have a separate and independent cause of action which would be removable if sued upon alone, joined with a non-removable cause of action within the meaning of 28 U.S.C.A. § 1441(c). Under such circumstances, the entire case was properly removed to this Court from the State Court. Substantially similar cases under this statute

are Hamilton v. Empire Gas & Fuel Co., 8 Cir., 1924, 297 F. 422; Sewell v. J. E. Crosbie, Inc., 8 Cir., 1942, 127 F.2d 599. See also Boatmen's Bank of St. Louis v. Fritzlen, 8 Cir., 1905, 135 F. 650, 663; Nichols v. Chesapeake & Ohio R. Co., 6 Cir., 1912, 195 F. 913; 1 Barron & Holtzoff, Federal Practice & Procedure, Sec. 105, p. 186 (1st Ed. 1950).

■ Even if the action brought by Mrs. Patterson did not fit so clearly within the terms of 28 U.S.C.A. § 1441(c), there are other grounds for allowing the removal of that action to this Court. Before the joinder of the Theo Bros. can defeat the jurisdiction of this Court, it must appear from the allegations of the complaint that the plaintiff stated a cause of action against them. Thiel v. Southern Pacific Co., 9 Cir., 1942, 126 F.2d 710; Meyerkorth v. McKeone, D.C.W.D. Mo.1945, 4 F.R.D. 323; Knight v. Atlantic Coast Line R. Co., 5 Cir., 1934, 73 F. 2d 76, 99 A.L.R. 405. The Court in Meyerkorth v. McKeone, supra, [4 F.R.D. 324], made the following statement in holding that no cause of action was stated against the resident defendants and, therefore, the suit was properly removed:

"While the complaints allege general acts of negligence against all the defendants, yet, in each case the pleader undertook to specify the negligence causing the collision. Such specifications were undertaken as to all of the defendants and not alone as to the non-resident defendants. Since, under the law, specific averments supersede general averments, the attention of the court must be directed to the specific acts of negligence alleged to determine whether the resident defendant was charged with negligence as concurring with that of the nonresident defendants. Not a single wrongful or negligent act is charged against the local defendant. Upon the complaints as they stand no recovery could be had or allowed against the local defendant. By joining him legal fraud was committed. Thiel v.

Southern Pac. Co., 9 Cir., 126 F.2d 710, loc. cit. 712."

■ In paragraph 7 of Mrs. Patterson's complaint (reproduced above) a general allegation against all the defendants as to the commission of acts of "waste of a high and aggravated nature" is made. But then Mrs. Patterson proceeds to make specific allegations of fact against all the parties. As in the Meyerkorth case, these specific allegations of fact must supersede the general allegation of waste. In paragraph 8, it is alleged that the Theo. Bros., along with Alabama and other agents and servants unknown to plaintiff, "have removed or had removed great and valuable deposits of vermiculite ore from the premises described * * *" This is the only factual allegation directed against the Theo Bros. in the entire complaint. It clearly does not state a cause of action against Theo Bros. since Alabama and Theo Bros., as Alabama's agents, had a clear right to mine and remove the ore under the lease.

As was said in the case of Thiel v. Southern Pacific Co., 9 Cir., 1942, 126 F.2d 710, at page 712:

"No cause of action having been stated against [the resident defendants] they must be disregarded in determining whether the suit was removable."

It also seems apparent to the Court that the sole purpose of joining the Theo Bros. in the State Court action was to defeat Alabama's right to remove that action to this Court. The Theo Bros. have no connection with the controversy between the real parties in interest. They were merely workmen carrying out the orders given them by the officers and other agents of Alabama. The affidavits filed in both of the civil actions failed to reveal any facts linking them with the controversy. And, as I have stated above, the complaint did not state a cause of action against them. When these facts are coupled with the other facts on the issue of negligent mining, to wit, that the issue was properly be-

fore this Court and was withdrawn at a time when Mrs. Patterson had the same action pending in the State Court; that Mrs. Patterson was present in the office of the lawyers representing the Pattersons when the affidavits were being prepared for submission to this Court regarding the negligent mining and thus obviously had knowledge of the proceeding pending in this Court; that Mrs. Patterson had a black record book to which reference was made for the facts relating to the alleged waste; and that during all of this time, she was living amicably with her husband who was one of the principal party defendants in the action before this Court, the conclusion is inescapable that her action was designed to further harass and impede Alabama in its mining operations and that Theo Bros. were joined for the purpose of preventing the action being removed to this Court. Cox v. Whitmer-Parsons Pulp & Lumber Co., 1927, 193 N.C. 28, 136 S.E. 254; Wecker v. National Enameling & Stamping Co., 1906, 204 U.S. 176, 177, 27 S.Ct. 184, 51 L.Ed. 430; Wilson v. Republic Iron & Steel Co., 1921, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144.

■ In addition to the reasons given above, this Court feels that it has at all times, had jurisdiction of the res that is involved in this controversy, i. e., the leased premises and that under such circumstances, it has a clear right to adjudicate all claims with reference thereto. See cases cited at page 545 of 149 F.Supp.

(b) Consolidation of Civil Action 1747 with Civil Action 1313.

■ Since the Court has concluded that Civil Action 1747 was properly removed to this Court, the next question raised is whether that action should be consolidated with Civil Action 1313 under F.R.C.P. Rule 42 for purposes of adjudication. The Court believes that this consolidation should take place since the issues raised in Civil Action 1747 concern exclusively the rights of the parties to the property leased to Alabama by the Pattersons. The Court has taken

exclusive jurisdiction over that property in Civil Action 1313 and all the parties in interest are before the Court in that action. Such is not the case in Civil Action 1747. In order to grant complete relief it would therefore seem necessary that consolidation of the actions be ordered. No valid showing has been or can be made that this action would in any way prejudice the rights of any party in either action.

(c) Protection of Mrs. Patterson's inchoate right of dower.

One of the two forms of relief that Mrs. Patterson has prayed for is the protection of her inchoate right of dower in the interest of her husband in the property demised to Alabama. After examining her sworn complaint, the answer made thereto, and the applicable authorities, the Court is convinced that she is entitled to the relief prayed for. B. H. & M. Oil Co. v. Graves, 1930, 182 Ark. 659, 32 S.W.2d 630; Brown v. Brown, 1913, 94 S.C. 492, 78 S.E. 447; Tatum v. Tatum, 1924, 174 Ark. 110, 295 S.W. 720, 53 A.L.R. 306. She is the lawful wife of one of the lessors, T. M. Patterson. During their coverture, T. M. Patterson joined in the lease demising his one-third undivided interest in the premises to Alabama; Mrs. Patterson did not join in the conveyance; Alabama is gradually removing vermiculite ore in accordance with the terms of the lease which has the natural effect of depleting the value of the land.

■ Under the authorities cited above, if she sustains the material allegations of the complaint, Mrs. Patterson is entitled to the impounding of a percentage of the royalties accruing to her husband, T. M. Patterson to protect her inchoate right of dower therein, and pending the determination of the amount on the merits, she is entitled to an order impounding a percentage of the royalties accruing to T. M. Patterson with the Clerk of this Court to protect her inchoate right of dower in vermiculite ore mined under the lease prior to the institution of her cause of action and such ore as is mined by Alabama pending the

determination on the merits of the value of her inchoate right of dower in the one-third interest of her husband in the leased premises.

(d) Waste.

The complaint filed by Mrs. Patterson has fairly raised the issue of whether Alabama, in the operation and the mining of the leased premises, has been guilty of wasteful and negligent mining. Upon the affidavit of R. M. Biddle hereinabove referred to, she obtained a rule to show cause and temporary injunction from the State Court pending the determination of this issue. In accordance with said rule and within the time therein provided, as extended by order of this Court dated May 5, 1955, Alabama filed its answer and return, accompanied by affidavits of the following persons: Lloyd L. Marshall, W. J. Theo, Joseph A. Kelley, Otis F. Stewart and J. L. Bishop.

Mrs. Patterson submitted no further testimony or affidavits in support of her claim to a temporary injunction or restraining order. The issue on the question of a temporary injunction was submitted to the Court on the records and affidavits and after a careful consideration of the same, the Court issued its oral order from the bench at the hearing on June 22, 1955 adjudicating Alabama's return as sufficient and dissolving the temporary injunction or restraining order issued by Judge E. H. Henderson on March 17, 1955, with the understanding that said ruling would be more fully covered by a formal order entered at a subsequent date.

At the outset, certain allegations made in the complaint may be summarily considered and dismissed. The complaint charges in paragraph 8:

"* * * (the defendants) * * * have removed or had removed great and valuable deposits of vermiculite ore from the premises described; that said defendant, Alabama Vermiculite Corporation, threatens to remove or have removed still more of said ore from the premises."

The charge of waste based on this allegation is without legal foundation. Alabama has a perfect right under the lease and the orders of this court to remove "great and valuable deposits of vermiculite ore" from the leasehold, and to mine the property in accordance with the terms of the lease without being subjected to charges of waste. As was said in the case of Schuykill Trust Co. v. Schuykill Mining Co., 1948, 358 Pa. 535, at page 538, 57 A.2d 833, at page 835:

"* * * it appears well established that the holders of the legal title to mining properties have the right to mine the property even to the extent of exhausting the mineral wealth as against the right of the holders of legal and equitable interest who are not in possession thereof without being subject to charges for waste * * *".

Certain other allegations were made in the complaint regarding (1) cutting roads and highways, (2) removing timber, (3) removing fences, and (4) attempting to eject Mrs. Patterson from her home located on the leased premises. These allegations are completely without foundation. As to the first three, the lessee is given a clear right under the terms of the lease to do all of these things. As to the fourth, the record before me indicates that Alabama has not attempted to eject Mrs. Patterson from the house referred to but has stated that it is willing for her and her husband to remain in said dwelling as long as its occupancy by them does not interfere with the plaintiff's mining rights under the lease. Mrs. Patterson has no legal right solely as the wife of T. M. Patterson, one of the lessors, to occupy this house during the lifetime of her husband and the lease of it without the relinquishment of her dower would not constitute waste or a diminution of her inchoate right of dower in property in which her husband has an interest. Alabama has kept and is keeping records of the quantities of vermiculite ore

mined by it from the leased premises and furnishing such information to the Pattersons at the time it makes the royalty payments to them provided in the lease. The unsupported statement that plaintiff has no knowledge or way to acquire the same of these quantities does not appeal to the conscience of the court.

The real basis of the charge of wasteful mining is contained in paragraph 9 of Mrs. Patterson's complaint. This allegation is based upon an affidavit of one R. M. Biddle which is incorporated into said paragraph of the complaint and made a part thereof. The Court has already pointed out the peculiar circumstances under which this affidavit appears to have been obtained. They convince the Court that Mrs. Patterson was acting in collusion with her husband, with whom she is still living in peace and harmony, in attempting to thwart the Court of jurisdiction heretofore assumed by it and to indirectly prevent the proper carrying out of the orders heretofore entered by this Court on April 20, 1954 and April 21, 1955 in this cause.

Biddle's affidavit when stripped of its irrelevancies and legal conclusions charges that forty carloads of material containing a large percentage of vermiculite have been pushed aside as waste material in the process of mining by Alabama. The affidavits submitted on behalf of Alabama present a detail picture of this mining operation. They reveal that when Alabama took possession of the premises in accordance with this Court's order dated April 20, 1954, all the mining which had been conducted by the Pattersons under the lease was done from a small opening in the ground on the top of a hill on the land; that this opening revealed a deposit of low-grade vermiculite ore containing a large proportion of dirt, rocks and other waste material. Since the Pattersons had conducted largely pick and shovel operations on this deposit, they were able, comparatively speaking, to get a good quality of vermiculite out of the low-grade crude ore. This is possible when what might be termed hand operations is used in the vermiculite mining. However, large scale mining requires mechanical equipment and when this is used it is impractical from an economic standpoint to separate the merchantable vermiculite from this low-grade ore. Deposits requiring a high grade of merchantable vermiculite ore—i. e., a high percentage of vermiculite in proportion to waste material—are required. Accordingly, the mining superintendent of Alabama ordered the Theo Bros. to strip a larger area of land on this deposit so that mechanical equipment could be used and to expose those deeper deposits of high-grade ore which were believed to exist at that opening at a lower depth. The affidavits filed clearly demonstrate that this is common practice in the vermiculite mining industry. The soil that was pushed aside in this operation consisted of soil, clay, rock and a small quantity of vermiculite ore of various grades and sizes. This material that was pushed aside is commonly called "overburden" and is the ore that Mrs. Patterson claims was wasted by Alabama. The affidavits filed, especially the affidavit of Otis F. Stewart, demonstrates that this material was not merchantable vermiculite ore. It could not, therefore, be the subject of waste.

In the order of this Court dated April 21, 1955, in Civil Action 1313, this Court construed the lease as requiring Alabama to pay to the Pattersons 75 cents per ton, or the market value, for unprocessed vermiculite ore mined by it from the premises without any allowance for moisture and waste. It would be unreasonable to require Alabama to pay the Pattersons for raw ore containing such a small quantity of merchantable vermiculite that it could not mine and transport the same except at prohibitive costs. This carries us back to the same contention made by the Pattersons at the first trial of Civil Action 1313 wherein they took the position that Alabama had to pay them for all earth dug from the ground and shipped to the processing plant, regardless of how little merchantable vermiculite it contained. This contention was

rejected by the Court as will be seen by reference to its order of April 20, 1954. The Court cannot believe that the parties had any such intention in entering into the lease. On the contrary, the Court is impelled to the conclusion that the parties had in mind the mining of vermiculite ore from the leased premises which would have a reasonable market value, based on the costs of extraction, transportation and refinement.

Even if this ore were merchantable, the alleged waste of which Mrs. Patterson complains constituted forty carloads of ore. According to the figures in the complaint, this alleged "waste" could only be about .004% of the total mineral deposits in the leased premises. This hardly gives Mrs. Patterson or the Pattersons the right to come to this Court and ask for the stringent relief prayed for in her complaint.

The Court cannot fix the final value of Mrs. Patterson's inchoate right of dower or finally determine the issue of waste at this stage of the proceedings, but it is expressing its views on these subjects in some detail so that the parties may govern their future course of action accordingly.

Suffice it to say here that the return of Alabama to the rule to show cause issued by Judge E. H. Henderson on March 17, 1955, is deemed sufficient, and the temporary injunction or restraining order will be dissolved as orally announced by the Court at the hearing on June 22, 1955.

(e) Should Mrs. Patterson's suit (Civil Action 1747) be consolidated with Civil Action 1313, the original action brought in this Court by Alabama?

Mrs. Patterson's suit for admeasurement of dower involves her husband, T. M. Patterson (one of the three Pattersons who are defendants in Civil Action 1313 and who executed the lease to Alabama). Indeed, any amount impounded by the Court to protect her inchoate right of dower must come out of his share of the royalties. As heretofore stated, he warranted the premises to Alabama *"against the claims and demands of all persons"*, including the dower claim of his wife. He is, therefore, an indispensable party to a proper adjudication of the amount, if any, which should be impounded out of his share to protect Mrs. Patterson's contingent dower interest. Civil Action 1747 should, therefore, be consolidated with Civil Action 1313, which will in effect make Mrs. Patterson a party defendant to said proceeding in so far as the issues between her and Alabama are concerned. The parties will be realigned as their interests may appear. This consolidation will obviate the necessity of making Mrs. Patterson a party defendant to Civil Action 1313.

(f) Should the Pattersons and Mrs. Patterson be required to litigate in the proceedings now before this Court, the issue of whether or not Alabama has committed waste on the leased premises as to all of said parties, and should they be enjoined from prosecuting any cause of action for alleged waste in any state or federal court other than in the pending Civil Action 1313 now before this Court?

In addition to the other relief asked by the parties, Alabama has prayed that this Court litigate the issue of waste as to all the Pattersons and their privies in the consolidated cases now before this Court, and that they be enjoined from instituting any action against it arising from the lease agreement in any Court but this one. The ground for this relief is that this Court has taken exclusive jurisdiction over the res (the leased property) and other litigation involving the same property in another court would result in unnecessary conflict. See Princess Lida of Thurn and Taxis v. Thompson, 1939, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285; Kline v. Burke Construction Co., 1922, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226; 14 Am.Jur. Courts, Sec. 251, p. 446 (1940). Alabama's point is well taken. As far as the State Court action instituted by Mrs. Patterson is concerned, the question is moot since that action has

been removed to this Court and consolidated with the case in which this Court did take exclusive jurisdiction over the property.

The Court permitted the Pattersons to withdraw the claim of waste injected by them in proceedings before this Court with the hope that they had finally decided that they, having repeatedly broken obligations assumed by them under the lease, would have to permit Alabama to mine vermiculite ore under the lease without interference and harassment on their part. The Court in some detail spelled out the procedure which should be followed in order to prevent any friction or untoward events which might perhaps otherwise arise. The Court, being perhaps too lenient on them under the circumstances, attributed their violation of its order to ignorance rather than design and relieved them of punishment for contempt of Court. In the light of the facts now before the Court, it must conclude that they were motivated by a purpose and design to thwart the jurisdiction of the Court and not through ignorance. The Court is convinced that the Pattersons and Mrs. Patterson acted in concert throughout this entire matter; that they had full knowledge of her State Court suit when they asked their attorneys to withdraw the waste issue from consideration by this court.

There are other undetermined issues such as the right of Alabama to damages against the Pattersons for breach of contract or to an extension of the lease for such period of time as the Pattersons unlawfully prevented Alabama from enjoying its rights under the lease. The Court is in hopes that some of these issues may be resolved by the parties themselves without the necessity of further hearings, but if they are not so resolved, this Court will determine them in this suit.

In view of the behavior of the Pattersons and Mrs. Patterson throughout the entire controversy over the lease, the Court is of the opinion that Alabama is entitled to injunctive relief against the Pattersons and Mrs. Patterson, requiring them to litigate the issue of waste before this Court and enjoining them from further action in any other Court but this Court.

Title 28, § 2283, U.S.C.A., reads as follows:

"Stay of State court proceedings

"A court of the United States may not grant an injunction to stay proceedings in a State *court except* as expressly authorized by Act of Congress, or *where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.*"

Having assumed jurisdiction of the res involved in these proceedings, it becomes necessary to enjoin any further action in any State Court in aid of said jurisdiction and to protect and effectuate the judgments heretofore rendered by this Court on April 20, 1954 and April 21, 1955.

### Conclusions of Law

The Court finds as a matter of law as follows:

1. That the suit filed by Mrs. Patterson in the State Court against Alabama and the Theo Bros. was properly removed to this Court for the following reasons:

(a) The complaint states two causes of action against the named defendants, one of which is exclusively between parties of diverse citizenship within the meaning of Title 28 U.S.C.A. § 1441(c);

(b) The complaint fails to state a bona fide cause of action against the Theo Bros.; hence, their joinder may be disregarded.

(c) The joinder of the Theo Bros. was not in good faith, but for the sole purpose of attempting to defeat the removal jurisdiction of this Court.

(d) This Court, having acquired jurisdiction of the res, has power to adjudicate all questions relating thereto.

2. That Civil Action 1313 and Civil Action 1747 should be consolidated under Rule 42 of the Federal Rules of Civil Procedure for the following reasons:

(a) That T. M. Patterson is an indispensable party to the adjudication of

the inchoate right of dower of Mrs. Vivian Campbell Patterson, the plaintiff in Civil Action 1747; that he is not a party to that action, but is a party to Civil Action 1313.

(b) That consolidation of said actions is necessary in order that the Court might award complete relief in Civil Action 1313 now pending before this Court.

(c) That both causes of action involve common questions of law and effect arising out of the same transaction.

(d) That the consolidation of said actions would avoid a multiplicity of suits and avoid unnecessary costs or delay.

3. That the consolidation of said actions obviates the necessity of making Mrs. Patterson a party defendant to Civil Action 1313 now pending before the Court.

4. (a) That Mrs. Patterson is entitled to the protection of her inchoate right of dower in the property leased to Alabama by her husband and the other two Patterson lessors.

(b) That pending an adjudication of said right, one-sixth of the royalties accruing to her husband should be impounded with the Clerk of this Court until the value of her inchoate right of dower and the method of its protection are determined by this Court.

5. That the return of Alabama to the rule to show cause and temporary injunction and restraining order issued by Judge E. H. Henderson on March 17, 1955 is deemed sufficient and the said injunction and restraining order should be dissolved as of June 22, 1955.

6. That Alabama is entitled to injunctive relief against the Pattersons and Mrs. Patterson, enjoining them from the institution or prosecution of any further actions in any other State or Federal Court than this Court, involving the lease now existing between the Pattersons and Alabama dated May 22, 1951, or in any way connected with or growing out of said lease.

7. That the Court reserves for further hearing on the merits in this proceeding the following issues:

(a) The value of the inchoate right of dower of Mrs. Patterson in the leased premises and the proper method of protecting the same.

(b) The alleged waste on the part of Alabama in the mining and removing of vermiculite ore from the leased premises.

8. That the issue of waste be determined not only as to Mrs. Patterson but also as to the Patterson lessors and that any decision of this Court thereon be binding upon all of said parties and their heirs, executors, administrators, successors and assigns.

Now, therefore, in accordance with the findings and conclusions, it is ordered, adjudged and decreed as follows:

1. That the motion of Mrs. Patterson to remand Civil Action 1747 to the Court of Common Pleas for Laurens County be, and the same is hereby denied.

2. That the motion of Alabama for the consolidation of Civil Action 1313 and Civil Action 1747 under Rule 42 of the Federal Rules of Civil Procedure, for adjudication of all undecided issues of law and fact raised therein, be and the same is hereby granted.

3. That, in view of the consolidation herein ordered, the motion of Alabama to make Mrs. Patterson a party-defendant to Civil Action 1313 be, and the same is hereby denied.

4. That the temporary injunction or restraining order heretofore issued by the State Court in what is Civil Action 1747 in this Court be, and the same is hereby, dissolved and Alabama released from any requirements regarding cessation of mining vermiculite under the provisions of said order.

5. (a) That the value of the inchoate right of dower of Mrs. Patterson in vermiculite ore mined by Alabama from the leased premises and the proper method of protecting the same be adjudicated by this Court after all facts relating thereto are presented.

(b) That pending said adjudication by this Court, Alabama be, and it is hereby, ordered and directed to pay to the Clerk

of the United States District Court, for the Western District of South Carolina, one-sixth of the royalties accruing to T. M. Patterson under the terms of the lease executed by him and others on May 22, 1951, to protect the inchoate right of dower of Mrs. Patterson in vermiculite ore mined by the Pattersons and/or Alabama prior to the institution of her action and vermiculite ore to be mined by Alabama in the future under the terms of the lease, said sum to be impounded by the Clerk until the value of said inchoate dower interest and the proper method of protecting the same are determined by further order of this Court, in accordance with the laws of the State of South Carolina.

6. That the issue of waste asserted by Mrs. Patterson be determined by this Court after all facts relating thereto are presented and that said issue, when so determined, be and the same is hereby declared to be binding not only on Mrs. Patterson but also on J. T. Patterson, W. A. Patterson and T. M. Patterson, their heirs, executors, administrators, successors and assigns.

7. That the Pattersons and Mrs. Patterson be, and they are hereby, enjoined from instituting or prosecuting any actions in any other state or federal court involving the lease now existing between the Pattersons and Alabama dated May 22, 1951, or in any way connected with or growing out of said lease.

8. That the Pattersons and Mrs. Patterson be, and they are hereby, enjoined from interfering with the exclusive possession of the leased premises by Alabama or from interfering with Alabama's mining and removing vermiculite ore therefrom under the terms of said lease and the orders of this Court.

9. That this Court retain jurisdiction of the leased premises and of this consolidated cause for the purpose of enforcing compliance with the terms of the orders heretofore entered herein and with the terms of this order and to aid the jurisdiction which this Court has already acquired in this matter.

Let a certified copy of this order be forthwith served upon the Pattersons and Mrs. Patterson.