**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

In re: Dissolution of DOEHLER )
DRY INGREDIENT SOLUTIONS, ) C.A. No. 2022-0354-LWW
LLC, a Delaware limited liability )
company )

**MEMORANDUM OPINION**

Date Submitted: July 8, 2022
Date Decided: September 15, 2022

Francis G.X. Pileggi, Cheneise V. Wright, LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, Delaware; *Counsel for Petitioner Russell Davis*

Kurt M. Heyman, Melissa N. Donimirski, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; Luke A. Lantta, Aiten M. McPherson, BRYAN CAVE LEIGHTON PAISNER LLP, Atlanta, Georgia; *Counsel for Respondents Doehler North America Inc., Stuart McCarroll, and Andreas Klein*

K. Tyler O'Connell, Kirsten A. Zeberkiewicz, Barnaby Grzaslewicz, MORRIS JAMES LLP, Wilmington, Delaware; *Counsel for Respondent Doehler Dry Ingredient Solutions, Inc.*

David B. Anthony, Zachary J. Schnapp, BERGER HARRIS LLP, Wilmington, Delaware; *Counsel for Respondent Garry Beckett*

**WILL, Vice Chancellor**

The petitioner in this action is a minority member and former manager of a Delaware limited liability company. The majority members of the company purportedly removed the petitioner as a manager through a March 2022 written consent. Now, the petitioner brings claims for judicial dissolution and winding up the affairs of the company, citing the requested dissolution as "cause." He names the company, its other members, a current manager, a former manager, and the chair of a member's parent company as respondents.

The petitioner asserts that his removal and assorted disputes, such as the purported hacking of his email by a manager of the company and unspecified conspiracies to commit malfeasance, have led to irreconcilable differences among the members and managers. He points to unproven breaches of fiduciary duty and of the company's LLC agreement in support of his claims. And he insists that he will cause deadlock in future votes on matters requiring unanimous member consent.

In this opinion, after considering threshold jurisdictional questions, I grant the respondents' motion to dismiss the petition for failure to state a claim. The dysfunction and contrived deadlock complained of fall well short of the high bar to plead a claim for judicial dissolution. Because the petition fails to adequately allege that it is not reasonably practicable for the company to carry on its business in conformity with its LLC agreement, the action is dismissed.

1

## I. FACTUAL BACKGROUND[1]

Respondent Doehler Dry Ingredient Solutions, LLC ("Doehler" or the "Company") is a Delaware limited liability company with its principal place of business in Indiana.[2] The Company was formed in 2017 for the purpose of "buying, sourcing, manufacturing, producing, distributing, packaging, marketing, and selling" dry foods, such as "air and freeze dried fruits and vegetables," for "business-to-business and direct consumer sales."[3]

Doehler is governed by the Operating Agreement of Doehler Dry Ingredient Solutions, LLC (the "LLC Agreement"). The LLC Agreement provides that the business of Doehler is managed by a "Board of Managers."[4] The Board of Managers initially included: petitioner Russell Davis; respondent Garry Beckett, who owns

---

[1] The facts are drawn from the Verified Petition and the documents it incorporates by reference or are subject to judicial notice. Dkt. 1 ("Pet."); *see Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013) ("[A] plaintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms." (*quoting Fletcher Int'l, Ltd. v. ION Geophysical Corp.*, 2011 WL 1167088, at *3 n.17 (Del. Ch. Mar. 29, 2011))); *In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (explaining that the court may take judicial notice of "facts that are not subject to reasonable dispute" (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006))); *Lima Delta Co. v. Glob. Aerospace, Inc.*, 2017 WL 4461423, at *4 (Del. Super. Ct. Oct. 5, 2017) (explaining that dockets, pleadings, and transcripts from a foreign action are subject to judicial notice).

[2] Pet. ¶ 11.

[3] Pet. Ex. A ("LLC Agreement") § 1(b); *see* Pet. ¶ 1.

[4] LLC Agreement § 7(a).

2

25% of the Company and remains a manager;[5] respondent Stuart McCarroll, who is no longer a manager;[6] and non-party J. Patrick O'Keefe.[7] Davis is allegedly the beneficial owner (through his controlled entity Crosskeys Associates Limited) of 25% of the Company.[8] The remaining 50% of Doehler is held by respondent Doehler North America, Inc. ("DNA").[9] Respondent Andreas Klein is the chair of DNA's parent company in Germany.[10]

By March 2022, a dispute had emerged between Davis and the other members of the Company. On March 24, members representing a majority of Doehler's membership interests voted by written consent to adopt resolutions removing Davis as a manager of the Company and limiting Davis's ability to invoice the Company for compensation for services.[11] That same day, Davis accused Beckett of hacking Davis's corporate email account and sharing information with Klein.[12]

---

[5] Pet. ¶ 12.

[6] Pet. ¶ 14.

[7] LLC Agreement § 7(b).

[8] Pet. ¶ 10.

[9] Pet. ¶ 13.

[10] Pet. ¶ 15; *see* Pet. Ex. C.

[11] Pet. ¶ 16; Pet. Ex. B. The petitioner contends that certain provisions of the LLC Agreement should have been amended following the written consent. Pet. ¶¶ 18-19.

[12] *See* Pet. ¶¶ 20-22; Pet. Ex. C.

According to Davis, other disagreements also arose—though his description of them is vague at best. At least one member "argue[d] that a prior [separate] agreement's terms control over the [LLC] Agreement."[13] Beckett "formed one or more companies of his own to compete with [the Company]" using Company resources.[14] And purported violations of the LLC Agreement occurred when Doehler incurred more than $25,000 of debt without unanimous member consent and when DNA sought to purchase Davis's ownership interests in the Company.[15]

On April 20, 2022, DNA filed an action against Davis and Crosskey in the United States District Court for the District of Delaware (the "Federal Action").[16] The complaint in the Federal Action asserts that Davis and Crosskey breached the LLC Agreement by refusing to sell Crosskey's units in Doehler to DNA.[17] DNA seeks specific performance "requiring [Crosskey] to sell and . . . Davis to cause the sale of [Crosskey's] units" for $44,486.14.[18]

---

[13] Pet. ¶ 17.

[14] Pet. ¶ 20.

[15] Pet. ¶ 23.

[16] Resp'ts' Opening Br. Supp. Mot. to Dismiss (Dkt. 26) Ex. A ("Fed. Compl.").

[17] Fed. Compl. ¶¶ 58-66.

[18] Fed. Compl. ¶ 66. The complaint in the Federal Action also asserts that Davis breached a membership agreement among the Company's members and seeks an injunction preventing Davis from interfering with Doehler's relationships with its customers, employees, and other third parties. *Id.* ¶¶ 50-57.

The next day, Davis filed a petition in this court (the "Petition"), seeking judicial dissolution of Doehler under Section 18-102 of the Delaware Limited Liability Company Act.[19] Davis contends that judicial dissolution is warranted because of various "[i]rreconcilable differences among the members and managers."[20] He also asks this court to wind up Doehler's affairs and appoint a liquidating trustee pursuant to Section 18-803 of the Delaware LLC Act.[21]

Respondents DNA, McCarroll, and Klein filed a motion to dismiss or stay this action on May 20, 2022.[22] Davis, in turn, filed a motion for partial summary judgment on June 1.[23] I heard oral argument on the motions on July 8.[24] Trial is scheduled to begin next month.

On July 15, the United States District Court for the District of Delaware denied a motion to stay the proceedings in the Federal Action pending the resolution of this action.[25]

---

[19] Dkt. 1.

[20] Pet. ¶¶ 2, 25-26.

[21] Pet. ¶¶ 27-29.

[22] Dkt. 21.

[23] Dkt. 32.

[24] Dkt. 66.

[25] Dtk. 70; *Doehler N. Am., Inc. v. Davis*, 2022 WL 2785969, at *3-4 (D. Del. July 15, 2022). The federal court determined that it had diversity jurisdiction. *Id.* at *3.

## II. LEGAL ANALYSIS

The respondents have moved to dismiss the Petition pursuant to Court of Chancery Rules 12(b)(1), 12(b)(2), and 12(b)(6).[26] They maintain that the Petition should be dismissed in its entirety because this court lacks subject matter jurisdiction. In the alternative, the respondents ask for a stay of this action pending resolution of the Federal Action. The respondents also assert that the court lacks personal jurisdiction over Klein. Finally, the respondents argue that the Petition fails to state a claim upon which relief can be granted.

Davis opposes the respondents' motion. He separately argues that he is entitled to partial summary judgment in his favor on the grounds that "§ 18-802 of the Delaware LLC Act has been satisfied" and "it no longer remains practicable to carry on the business of [Doehler] in accordance with its [LLC] Agreement."[27] The respondents oppose the summary judgment motion.

Because I conclude that this action must be dismissed in its entirety under Rule 12(b)(6), I decline to address Davis's arguments in support of partial summary judgment.

---

[26] Although the respondents also moved to dismiss under Rule 12(b)(3), they advanced no arguments in support in their briefing. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[27] Pet'r's Opening Br. Supp. Mot. for Partial Summ. J. (Dkt. 32) 39-40.

6

## A. Subject Matter Jurisdiction

I begin by addressing the threshold issue of subject matter jurisdiction. "Subject matter jurisdiction is in essence a question of the power of a court to hear and decide the case before it."[28] When considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, I must take all well-pleaded allegations as true and construe reasonable inferences in the non-movant's favor.[29] "The burden of establishing the Court's subject matter jurisdiction rests with the party seeking the Court's intervention."[30]

Section 18-802 of the Delaware LLC Act grants the Court of Chancery subject matter jurisdiction over dissolution proceedings.[31] That statute provides: "On application by or for a member or manager the Court of Chancery may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the operating agreement."[32] The respondents argue that this court nonetheless lacks jurisdiction under the doctrine set

---

[28] *Abbott v. Vavala*, 2022 WL 453609, at *5 (Del. Ch. Feb. 15, 2022).

[29] *de Adler v. Upper N.Y. Inv. Co.*, 2013 WL 5874645, at *7 (Del. Ch. Oct. 31, 2013).

[30] *Ropp v. King*, 2007 WL 2198771, at *2 (Del. Ch. July 25, 2007).

[31] *See Darby Emerging Mkts. Fund, L.P. v. Ryan*, 2013 WL 6401131, at *5 (Del. Ch. Nov. 27, 2013) ("As Delaware's constitutional court of equity, this Court can acquire subject matter jurisdiction over a case . . . [through] a statutory delegation of subject matter jurisdiction.").

[32] 6 *Del. C.* § 18-802; *see In re TGM Enters., LLC*, 2008 WL 4261035, at *2 (Del. Ch. Sept. 12, 2008) (stating that "jurisdiction rests solely with the Court of Chancery where a party moves for dissolution of a company").

forth by the United States Supreme Court in *Princess Lida of Thurn & Taxis v. Thompson*.[33]

In *Princess Lida*, the trustees of a fund filed suit in Pennsylvania state court for an accounting of the trust funds. The trust's beneficiaries subsequently filed an action in federal court, alleging that the trustees had mismanaged the funds and seeking removal of the trustees, an accounting, and restoration of the trust funds.[34] The Supreme Court held that because the Pennsylvania state court action was *quasi in rem*, the federal court hearing the subsequent action lacked jurisdiction over the property at issue.[35] The Supreme Court explained that "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other."[36]

The *Princess Lida* doctrine applies where there is a prior pending action and two conditions are met: "(1) the litigation in both the first and second fora are in rem or quasi in rem in nature, and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the

---

[33] *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939).

[34] *Id.* at 458-59.

[35] *Id.* at 466-468.

[36] *Id.* at 466; *see also Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania*, 294 U.S. 189, 194-199 (1935) (applying the doctrine in the context of a first-filed federal case and second-filed state case and holding that the federal court had exclusive jurisdiction).

control of the first court."[37]  Delaware courts have not had occasion to consider the application of *Princess Lida*.  The United States Court of Appeals for the Third Circuit has described the doctrine as a "mechanical rule" of jurisdiction rather than a matter of discretion.[38]

The present action is *in rem*.[39]  Under *Princess Lida*, I must consider whether the Federal Action is similarly *in rem* or *quasi in rem*—that is, whether the "practical effect of the relief" sought in the Federal Action would require that court to assert control over property.[40]  The Supreme Court in *Princess Lida* explained:

> the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other . . . [applies] in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.[41]

The Federal Action is for breach of contract, which is a classic *in personam* action.[42]  The respondents contend that the Federal Action is *in rem* or *quasi in rem*

---

[37] *Dyno v. Dyno*, 2021 WL 3508252, at *2 (3d Cir. Aug. 10, 2021) (quoting *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993)).

[38] *Id.*

[39] S*ee In re Rehab. of Nat'l Heritage Life Ins. Co.*, 656 A.2d 252, 260 (Del. Ch. 1994) ("A dissolution proceeding is an *in rem* action.").

[40] *Dyno*, 2021 WL 3508252, at *3; *see also Dailey v. Nat'l Hockey League*, 987 F.2d 172, 177 (3d Cir. 1993).

[41] *Princess Lida*, 305 U.S. at 466.

[42] *See* 20 Am. Jur. 2d *Courts* § 80, Westlaw (database updated Aug. 2022) ("When the cause of action is based on a contract and the action seeks damages on the ground of breach of contract, the action is transitory in nature and may be adjudicated by any court which has jurisdiction in personam of the defendant, irrespective of where the contract was

because that litigation seeks specific performance of an obligation under a buy-out provision in the LLC Agreement concerning the sale of Crosskey's Doehler units to DNA.[43] But "an action for specific performance of a contract," even where it relates to "property, is in personam insofar as it is sought to compel performance by the defendant."[44] That is precisely the situation in the Federal Action, where DNA seeks relief "requiring [Crosskey] to sell" and "requiring Davis to cause the sale" of Crosskey's units in Doehler for a set price.[45]

---

concluded and irrespective of where it is to be performed."); *Miller v. Miller*, 423 F.2d 145, 147 (10th Cir. 1970) ("The federal court judgment when entered will act in personam on the parties before it. The possession of land will not be affected. . . . Here, the federal action takes possession or control of no res. It determines personal rights under a written instrument."); *Ballantine Books, Inc. v. Cap. Distrib. Co.*, 302 F.2d 17, 19 (2d Cir. 1962) ("Had this case been initiated as a civil action rather than by arbitration, it would have been a simple contract action, with none of the in rem characteristics which required the application of a different rule in such cases as *Princess Lida of Thurn & Taxis v. Thompson*.").

[43] Resp'ts' Opening Br. Supp. Mot. to Dismiss 9-11.

[44] 71 Am. Jur. 2d *Specific Performance* § 196, Westlaw (database updated Aug. 2022); *Anzilotti v. Andrews Constr. Co.*, 115 A.2d 493, 496 (Del. Ch. 1955) (explaining that "a suit for specific performance is in the nature of a proceeding in personam"); *Cottman Transmission Sys., Inc. v. Lehwald, Inc.*, 774 F. Supp. 919, 921 (E.D. Pa. 1991) ("It is settled law that 'a suit to compel the specific performance of a contract to convey real property is a suit in personam, and not in rem.'" (quoting *Atlantic Seaboard Nat. Gas Co. v. Whitten*, 315 Pa. 529, 532 (1934))). The respondents point out that an action for specific performance may, in certain instances, be considered an *in rem* or *quasi in rem* action where the parties' interests in property are determined. *See* Resp'ts' Reply Br. Supp. Mot. to Dismiss (Dkt. 60) 7-8, n.4. They cite to examples concerning the conveyance of real property or property sought by the claimant that is within the jurisdiction of the court and subject to seizure. *Id.* The claims in the Federal Action are not of that ilk.

[45] Fed. Compl. ¶ 66.

10

Even if the Federal Action could arguably be viewed as *quasi in rem*, the parties' respective property interests differ between the two matters.[46] In the Federal Action, the only property arguably at stake is Crosskey's membership units in Doehler. The property at issue in the present litigation is Doehler itself. I therefore cannot conclude that this court's adjudication of the dissolution proceeding would impede the federal court's jurisdiction.[47]

The District of Delaware opined in the Federal Action that "[i]f the Court of Chancery were to dissolve [Doehler], then [the federal court] would not be able to award specific performance, that is, compel [Davis and Crosskey] to transfer their units of [Doehler] to plaintiff."[48] That statement, made in the context of denying a motion to stay, could well provide a basis for a discretionary stay of this action pending the resolution of the Federal Action.[49] But I need not reach the respondents' alternative request for a stay, which is not a matter of subject matter jurisdiction.

---

[46] *See Three Keys Ltd. v. SR Util. Hldg. Co.*, 540 F.3d 220, 230 (3d Cir. 2008) (describing the "distinction between an *in personam* action seeking a judgment that a party has the right to a distributive share of an estate, but stopping short of determining a party's interest in specific estate property, and an *in rem* action . . . seek[ing] a determination of a party's interest in specific property [within the estate]").

[47] *See* 13F Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3631 (3d ed. 2022) (explaining that a court does not interfere with another court's exclusive control of a *res* if one court is adjudicating the right of an individual to that *res* in a separate *in personam* action).

[48] *Doehler N. Am.*, 2022 WL 2785969, at *3.

[49] *See McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (1970).

11

The respondents' concerns about this action proceeding alongside the Federal Action will not be realized in any event because the petitioner has failed to state a claim.

## B. Personal Jurisdiction

The second threshold issue raised by the respondents is whether this court has personal jurisdiction over Klein,[50] who has moved for dismissal on that basis. The court applies a two-step analysis in determining whether it has jurisdiction over a non-resident defendant. "First, the court must determine whether service of process is authorized by statute. If so, the court will consider whether the defendant has sufficient minimum contacts with Delaware such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"[51] The petitioner bears the burden of showing a basis for the court's exercise of jurisdiction over Klein.[52]

---

[50] *Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 269 (Del. 1993) ("A court without personal jurisdiction has no power to dismiss a complaint for failure to state a claim."); *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 327 (Del. Ch. 2003) ("Before reaching the merits of their motion to dismiss under Court of Chancery Rule 12(b)(6), the court must first consider the [respondents'] motion to dismiss for lack of personal jurisdiction pursuant to Court of Chancery Rule 12(b)(2).").

[51] *Fortis Advisors LLC v. Johnson & Johnson*, 2021 WL 5893997, at *5 (Del. Ch. Dec. 13, 2021) (quoting *Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023, 1027 (Del. 2012) & *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[52] *See Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) ("If, as here, no evidentiary hearing has been held, plaintiffs need only make a *prima facie* showing of personal jurisdiction and the record is construed in the light most favorable to the plaintiff."). Davis contends that he has sufficiently pleaded civil conspiracy under Rule 8(a). Rule 8(a) is not the appropriate legal standard to analyze personal jurisdiction based on the conspiracy theory. Instead, I apply Rule 12(b)(2) and the *Istituto Bancario* test. *See HUMC Holdco,*

Klein is not alleged to be a past or present manager of Doehler. He is the chair of DNA's parent company, which is located in Germany.[53] The lone basis for personal jurisdiction pleaded in the Petition is a conspiracy theory.[54]

"The conspiracy theory of jurisdiction is narrowly and strictly construed."[55] To establish personal jurisdiction under the conspiracy theory, Davis must show five elements:

> (1) a conspiracy . . . existed; (2) the [respondent] was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the [respondent] knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct

---

*LLC v. MPT of Hoboken TRS, LLC*, 2022 WL 3010640, at *20 (Del. Ch. July 29, 2022) ("Court of Chancery Rule 8(a) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' 'When a complaint fails to do so, it must be dismissed under Rule 12(b)(6).'" (quoting *In re Coca-Cola Enters., Inc.*, 2007 WL 3122370, at *3 (Del. Ch. Oct. 17, 2007))).

[53] *See* Pet. ¶ 15, Ex. C.

[54] Pet. ¶ 9, n.2. In opposing the motion to dismiss, the petitioner advances a previously unpleaded theory of personal jurisdiction: that Klein is subject to service under 6 *Del. C.* § 18-109. Pet'r's Answering Br. Opp. Mot. to Dismiss (Dkt. 51) 37. But "[a]rguments in briefs do not serve to amend the pleadings." *Cal. Pub. Emps.' Ret. Sys. v. Coulter*, 2002 WL 31888343, at *12 (Del. Ch. Dec. 18, 2002). Were I to credit it, the argument would fail. Davis asserts that Klein is subject to service because he "participated materially in the management of [Doehler] for purposes of the claims being asserted." Pet'r's Answering Br. Opp. Mot. to Dismiss 37 (quoting *Metro Storage Int'l LLC v. Harron*, 2019 WL 3282613, at *20 (Del. Ch. July 19, 2019)). The Petition offers no grounds from which I could conclude that Klein materially participated in managing Doehler such that he could be treated as a manager under Section 18-109(a)(ii).

[55] *Comput. People, Inc. v. Best Int'l Grp., Inc.*, 1999 WL 288119, at *6 (Del. Ch. Apr. 27, 1999).

13

and foreseeable result of the conduct in furtherance of the conspiracy.[56]

The test "ultimately 'turns on the imputation to the [alleged] conspirator of meaningful activity on behalf of the conspiracy *which occurred and caused effects in Delaware.*'"[57] The plaintiff is required to assert specific facts—not conclusory allegations—in support of each element.[58] "[A]pplication of personal jurisdiction under the conspiracy theory requires factual proof of each enumerated element."[59]

The petitioner fails to make the requisite "showing that a tangible *act or omission* actually took place in Delaware."[60] Davis alleges that a civil conspiracy existed between Klein and Beckett for Beckett to breach his fiduciary duties as a manager of Doehler by "hacking into [Davis's] email inbox."[61] To support this theory, Davis cites an email he sent to Klein, Beckett, and others accusing Beckett of "having emails from [Davis's account] . . . forwarded to [Beckett's] account."[62]

---

[56] *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982).

[57] *Comput. People*, 1999 WL 28119, at *6 (emphasis in original) (quoting *HMG/Courtland Props., Inc. v. Gray*, 729 A. 2d 300, 307 (Del. Ch. 1999)).

[58] *See Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *10 (Del. Ch. June 15, 2011), *aff'd*, 38 A.3d 1254 (Del. 2012) (TABLE).

[59] *Lone Pine Res., LP v. Dickey*, 2021 WL 2311954, at *10 (Del. Ch. June 7, 2021).

[60] *Hartsel*, 2011 WL 2421033, at *14 (emphasis in original); *see also Altabef v. Neugarten*, 2021 WL 5919459, at *10-11 (Del. Ch. Dec. 15, 2021).

[61] Pet. ¶ 9 n.2.

[62] Pet. Ex. C at 2.

Setting aside whether this email can evidence Klein's involvement in the so-called hacking, it cannot support conspiracy jurisdiction. The Petition does not allege *any* act or omission in Delaware—let alone a "substantial" one.[63] It is not enough for Davis to assert that the conspiracy caused harm to a Delaware entity or that Beckett is a manager of a Delaware LLC.[64] To hold otherwise would "circumvent the minimum contacts requirement of *International Shoe Co. v. Washington*."[65]

Accordingly, the court lacks personal jurisdiction over Klein.[66]

## C.   Failure to State a Claim

Finally, the respondents argue that the court should dismiss the Petition under Rule 12(b)(6) because it fails to state a claim for dissolution. "[T]he pleading

---

[63] *Istituto Bancario*, 449 A.2d at 225.

[64] Pet. ¶ 9 n.2; *see Hartsel*, 2011 WL 2421003, at *14 "(Although this Court has recognized financial harm to a Delaware business entity as a form of *injury* that has occurred in Delaware, it nonetheless has required, consistent with notions of due process, a factual showing that a tangible *act or omission* actually took place in Delaware."); *Altabef*, 2021 WL 5919459, at *11 n.116.

[65] *Comput. People*, 1999 WL 288119, at *6.

[66] The respondents further argue that Klein and McCarroll should be dismissed from this action because the requested relief cannot be awarded by those individuals. This argument concerns whether McCarroll and Klein are "real parties in interest." Resp'ts' Reply Br. Supp. Mot. to Dismiss 22. Because I have determined that the court lacks personal jurisdiction over Klein and that the Petition fails to state a claim, I need not address this argument. I note that I cannot discern the relevance of Davis's allegation that McCarroll (in concert with DNA and Klein) failed to act in the Company's best interest to his dissolution claim. *See* Pet. ¶ 24.

15

standards for purposes of a Rule 12(b)(6) motion 'are minimal,'" and the operative test is "one of 'reasonable conceivability,'" which "asks whether there is a 'possibility' of recovery."[67] When considering a 12(b)(6) motion:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[68]

The court is not required to "to accept conclusory allegations unsupported by specific facts or to draw unreasonable inferences in favor of the non-moving party."[69]

The Petition asks this court to order the dissolution of Doehler pursuant to Section 18-802 of the Delaware Limited Liability Company Act, which provides:

> On application by or for a member or manager the Court of Chancery may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement.[70]

---

[67] *In re China Agritech, Inc. S'holder Deriv. Litig.*, 2013 WL 2181514, at *23-24 (Del. Ch. May 21, 2013) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536-37 (Del. 2011)).

[68] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (internal citation omitted).

[69] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011).

[70] 6 *Del. C.* § 18-802.

16

"Given its extreme nature, judicial dissolution is a limited remedy that this court grants sparingly."[71] Its availability is limited to situations where "the LLC's management has become so dysfunctional or its business purpose so thwarted that it is no longer practicable to operate the business, such as in . . . a voting deadlock or where the defined purpose of the entity has become impossible to fulfill."[72] The Petition falls well short of satisfying this arduous standard.

First, the petitioner does not allege facts supporting an inference that the Company is deadlocked at the member or manager level.[73] In arguing that he has pleaded deadlock, he focuses on an allegation that the members of the Company

---

[71] *In re Arrow Inv. Advisors, LLC*, 2009 WL 1101682, at *2 (Del. Ch. Apr. 23, 2009).

[72] *Id.*; *see also BET FRX LLC v. Myers*, 2022 WL 1236955, at *6 (Del. Ch. Apr. 27, 2022); *Fisk Ventures, LLC v. Segal*, 2009 WL 73957, at *4 (Del. Ch. Jan. 13, 2009) ("The text of § 18-802 does not specify what a court must consider in evaluating the 'reasonably practicable' standard, but several convincing factual circumstances have pervaded the case law: (1) the members' vote is deadlocked at the Board level; (2) the operating agreement gives no means of navigating around the deadlock; and (3) due to the financial condition of the company, there is effectively no business to operate."); *In re Seneca Invs. LLC*, 970 A.2d 259, 263 (Del. Ch. 2008) (dismissing a petition for dissolution of a limited liability company because the petition did not allege a voting deadlock among the members or that it was impracticable to carry on the entity's business purpose).

[73] Davis cites to exhibits extrinsic to the Petition, including exhibits to his opening brief for summary judgment, in support of this argument and elsewhere in his opposition brief. *E.g.*, Pet'r's Answering Br. Opp. Mot. to Dismiss 48 n.12. I disregard these attempts to introduce evidence in opposing a motion to dismiss. *See Vanderbilt Income & Growth Assocs. LLC v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 612 (Del. 1996) ("[T]he general rule [is] that matters outside the pleadings should not be considered in ruling on a Rule 12(b)(6) motion to dismiss."). Davis also relies on various post-trial decisions that are unhelpful to his arguments at the pleading stage. *E.g.*, Pet'r's Answering Br. Opp. Mot. to Dismiss 56. Simply put, his various arguments fail. The Petition comes nowhere close to stating a reasonably conceivable claim for judicial dissolution.

17

violated the LLC Agreement by incurring more than $25,000 without unanimous consent.[74] The Petition framed this as an issue of breach of contract—not deadlock.[75] Regardless, Davis provides no facts from which the court could assess whether that breach is reasonably conceivable.[76]

Davis also contends that Crosskey will decline to approve "nine actions critical to the LLC" for which unanimous consent is required under the LLC Agreement. His argument fails to identify any *existing* deadlock. Rather, it concerns *prospective* deadlock if the petitioner withholds future consent. This contrived attempt to manufacture deadlock cannot support a claim for judicial dissolution.[77]

Had Davis adequately alleged voting deadlock, dissolution would still be unavailable because the deadlock could "be remedied through a legal mechanism set within the four corners of the operating agreement."[78] For example, Section 10(b)

---

[74] Pet'r's Answering Br. Opp. Mot. to Dismiss 47 (citing Pet. ¶ 23).

[75] *See BET FRX*, 2022 WL 1236995, at *7 ("Mere disagreement, or even fiduciary breaches standing alone, do not support a claim for judicial dissolution.").

[76] The provision at issue appears to only apply to debt "with, from or on behalf of any financial institution." LLC Agreement § 6(b)(ix).

[77] *See Mehra v. Teller*, 2021 WL 300352, at *18 (Del. Ch. Jan. 29, 2021) ("A genuine deadlock does not exist where it is 'based upon a specious premise' or 'one side sought to manufacture it 'by refusing to consider any issue.'" (quoting *Kleinberg v. Cohen*, 2017 WL 568342, at *11 (Del. Ch. Feb. 13, 2017))); *Millien v. Popescu*, 2014 WL 656651, at *2 n.17 (Del. Ch. Feb. 19, 2014) ("Millien sought to create a deadlock by refusing to consider any issue. This is not the type of conduct that should support the appointment of a custodian.").

[78] *Fisk Ventures*, 2009 WL 73957, at *7; *see Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) ("[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law.").

of the LLC Agreement contains a "Buy-Sell Option" that applies "in the event that the Members become deadlocked with respect to any decision that materially and adversely affects the Corporation's business as a result of their dispute."[79] Davis did not avail himself of this option (or even reference it in the Petition).[80] Furthermore, Section 12 of the LLC Agreement provides a contractual process for dissolution "[u]pon the occurrence of an event of dissolution described in Section 1, or in the event that a deadlock cannot be duly resolved under the provisions of Section 10(b)."[81]

---

[79] LLC Agreement § 10(b). Under the Buy-Sell Option, any of the members (the "Electing Members") can deliver written notice to the other members (the "Responding Members") proposing a purchase price for each of Doehler's units (the "Buy-Sell Price"). *Id.* After receiving this notice, the Responding Members are required to either (1) purchase all of the Electing Members units in Doehler at the Buy-Sell Price or (2) sell all of their units to the Electing Members at the Buy-Sell Price. *Id.*

[80] Davis argues that the Buy-Sell Option is inequitable because it amounts to a game of "Russian Roulette" that could force Davis to buy the interests of DNA and Beckett rather than provide for the sale of Crosskey's units. *See* Pet'r's Answering Br. Opp. Mot. to Dismiss 54. A review of the LLC Agreement indicates that this concern would only arise if Davis proposed an unreasonably high price. Davis raises a separate argument in the reply brief in support of his summary judgment motion that the Buy-Sell Option fails to operate as an equitable exit mechanism because it "does not mandate a price [or] pricing formula." Pet'r's Reply Br. Supp. Mot. for Partial Summ. J. (Dkt. 61) 16 (quoting *Seokoh, Inc. v. Lard-PT, LLC*, 2021 WL 1197593, at *15 (Del. Ch. Mar. 30, 2021)). That argument is not before me in addressing the motion to dismiss. I note for the sake of completeness that, so long as Davis proposed a fair price, the Buy-Sell Option does not require further "negotiations [among the members] regarding [price] as a matter of course." *Seokoh*, 2021 WL 1197593, at *15.

[81] LLC Agreement § 12. Section 1 of the LLC Agreement provides that "[t]he Company's existence shall continue in full force and effect until the Company is dissolved upon the first to occur of the following events: (i) the unanimous determination of the Members to

Second, Davis's allegations do not demonstrate that the "defined purpose of the entity has become impossible to fulfill."[82] As described in the LLC Agreement, Doehler was formed to act as a vehicle for its members to invest in the dry foods business.[83] Nothing in the Petition supports an inference that the Company is not currently performing these functions.[84]

Instead, Davis appears to base his request for dissolution on his removal as a manager, the attempt to remove him as a member, purported breaches of the LLC Agreement, alleged breaches of fiduciary duty, and an unarticulated "conspir[acy] to commit malfeasance."[85] These allegations (even if true) do not suggest that Doehler "is suffering the rare fate of being a company that is unable to operate in accordance with its governing document."[86] He thus provides no valid grounds for judicial dissolution.[87]

---

dissolve the Company; or (j) any event that makes the continued existence of the Company unlawful, including the entry of a decree of judicial dissolution." LLC Agreement § 1(h).

[82] *In re Arrow Inv. Advisors*, 2009 WL 1101682, at *2.

[83] LLC Agreement § 1(b).

[84] Once again, in opposing the motion to dismiss, Davis improperly relies upon extrinsic evidence in an effort to establish a "dysfunctional and fractious relationship" among the members of Doehler. Pet'r's Answering Br. Opp. Mot. to Dismiss 55; *see supra* note 73.

[85] Pet. ¶¶ 2, 16-24.

[86] *In re Arrow Inv. Advisors*, 2009 WL 1101682, at *3.

[87] *Id.*; *see also BET FRX*, 2022 WL 1236955, at *6-7.

Because Davis has failed to state a viable dissolution claim, his claim to wind up the affairs of Doehler under 6 *Del. C.* § 18-803 must likewise be dismissed. Section 18-803 of the Delaware LLC Act provides that "the Court of Chancery, upon cause shown, may wind up the limited liability company's affairs upon application of any member . . . and in connection therewith, may appoint a liquidating trustee." The sole "cause" alleged by Davis is the predicate claim for judicial dissolution.[88]

## III. CONCLUSION

The respondents' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is denied. Klein's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction is granted. The respondents' motion to dismiss the Petition under Rule 12(b)(6) is granted. Given that the Petition is dismissed in its entirety with prejudice, the petitioner's motion for summary judgment fails.

---

[88] Pet. ¶ 28.